UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
S&R DEVELOPMENT ESTATES, LLC and "JOHN
DOE" NOS. 1 THROUGH 75,

   Plaintiffs,

 - against -

STEVEN BASS, EDDIE MAE BARNES, PAUL
FEINER, DIANA JUETTNER and FRANCIS
SHEEHAN, Constituting the Town Board of the Town of
Greenburgh, Westchester County, New York, STEVEN
BELASCO, MALCOLM BAUMGARTNER, EVE
BUNTING-SMITH, NICHOLAS DECICCO,
LAWRENCE DOYLE, ROHAN HARRISON and
DANIEL ROSENBLUM, Constituting the Zoning Board
of Appeals of the Town of Greenburgh, Westchester
County, New York, MARK STELLATO, Commissioner
of the Department of Community Development and
Conservation of the Town of Greenburgh, TOWN OF
GREENBURGH and JOHN and JANE DOE,

   Defendants.
------------------------------------------------------------------X

07 Civ. 11112(WCC)(GAY)
ECF CASE

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6)**

---

On the Brief
 James M. Woolsey, III (JW - 9152)
 Jerry A. Cuomo (JC - 4253)

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
NEW YORK, N.Y. 10271-0079
(212) 238-4800

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Creation of the CA District and the
          Property's R-20 Zoning Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The 1997 Creation of the Conservation District Zone . . . . . . . . . . . . . . . . . . 4

    D.    S&R's Alleged Pre-Acquisition Due Diligence . . . . . . . . . . . . . . . . . . . . . . 4

    E.    S&R's Demolition of the Single-Family Home and Pool
          on the Property and the Town's Identification of the
          Property as Located in an R-20 District . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    F.    Post-Demolition Meetings with Town Personnel . . . . . . . . . . . . . . . . . . . . 5

    G.    Opposition to Residential Development On Central
          Avenue and the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    H.    S&R's Application for Site Plan Approval and
          the Town's Discovery of the Error on the Town's Official Map . . . . . . . . . . . . 9

    I.    S&R's Appeal to the Town's Zoning Board of Appeals . . . . . . . . . . . . . . . . . 10

    J.    S&R's Claims in this Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**POINT I**

    S&R'S CONSTITUTIONAL CLAIMS ARE
    NOT RIPE AND THE COURT LACKS SUBJECT
    MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.    S&R Has Not Obtained a "Final Decision"
          Concerning the Use of the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.     S&R Has Failed to Seek Compensation
       In New York State Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**POINT II**

       S&R'S DUE PROCESS AND TAKINGS CLAIMS
       MUST ALSO BE DISMISSED BECAUSE IT HAS NO
       "PROPERTY INTEREST" IN THE ZONING CLASSIFICATION
       OF THE PROPERTY AS A CA DISTRICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.     Under New York Law, There is No Property
       Interest In a Particular Zoning Classification . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.     S&R Has not Obtained a "Vested" Property
       Right in the CA District Classification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

       1.     S&R Has Not Performed Any Work
              Permitted under the CA District . . . . . . . . . . . . . . . . . . . . . . . . . 22

       2.     S&R Would Not "Unquestionably" Have
              Received Authorization for its Proposed CA
              District Site Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

       3.     The Drafting Error on the Town's Official
              Map Does Not Create A Vested Property Interest . . . . . . . . . . . 25

C.     Whether the Town Acted Improperly In
       Correcting the Official Map Is Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**POINT III**

       S&R'S PROCEDURAL DUE PROCESS CLAIM
       MUST ALSO BE DISMISSED BECAUSE THE ZBA ISSUED
       A WRITTEN OPINION AFTER A FULL HEARING . . . . . . . . . . . . . . . . . . . . . . . . 29

**POINT IV**

       S&R'S TAKINGS CLAIM SHOULD ALSO BE DISMISSED
       BECAUSE THE PROPERTY IS ECONOMICALLY
       VIABLE IN THE R-20 DISTRICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**POINT V**

    S&R'S EQUAL PROTECTION CLAIM MUST ALSO
    BE DISMISSED BECAUSE S&R FAILS TO ALLEGE
    THAT IT HAS BEEN TREATED DIFFERENTLY THAN
    OTHER "SIMILARLY SITUATED" ENTITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**POINT VI**

    S&R'S ARTICLE 78 CLAIM MUST BE DISMISSED
    BECAUSE IT IS UNTIMELY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**POINT VII**

    S&R'S CLAIMS AGAINST THE TOWN OF
    GREENBURGH FAIL TO ALLEGE AN UNCONSTITUTIONAL
    CUSTOM OR POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**POINT VIII**

    S&R'S DECLARATORY JUDGMENT AND ARTICLE 78
    CLAIMS SHOULD ALSO BE DISMISSED FOR LACK
    OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**POINT IX**

    THE COURT MUST DISMISS S&R'S FAIR HOUSING
    ACT CLAIM BECAUSE IT FAILS TO ALLEGE ANY
    FACTS TO SUPPORT A CLAIM OF "FAMILIAL STATUS"
    DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    A.    Statutory Language . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    B.    S&R Cannot State A Claim Under § 3604(a) . . . . . . . . . . . . . . . . . . . . . . . . 38

    C.    S&R Cannot State a Claim Under § 3604(b) or § 3604(c) . . . . . . . . . . . . . . . 39

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## PRELIMINARY STATEMENT

Plaintiff S&R Development Estates, LLC ("S&R") claims that the defendant Town of Greenburgh and several of its officials[1] violated S&R's constitutional rights when, in February 2007, the Town corrected a 1997 draftsman's error by the Town Engineer's office in revising the Town's Official Zoning Map. The error changed the location of property purchased by S&R in 2006 from an R-20 One Family Residence District ("R-20 District") to a Central Avenue Mixed-Use Impact District ("CA District"). The R-20 District permits one-family dwellings, while the CA District permits multifamily developments. S&R claims the Town's correction of the error on its Official Map unconstitutionally deprived S&R of a lucrative opportunity to build a multifamily structure on the property.

S&R claims violations of due process, equal protection and asserts a regulatory takings claim. S&R also asserts Article 78, declaratory judgment and Fair Housing Act claims seeking to invalidate the Town's action. S&R's claims must be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and/or for failure to state a claim under Fed. R. Civ. P. 12(b)(6) for the following reasons:

- S&R's constitutional claims are not ripe because it has neither obtained a "final decision" from the Town on how it can use the property, nor availed itself of the numerous avenues for compensation available in the New York state courts;

- S&R has no federally protected "property interest" in the zoning status of its property;

- S&R has not obtained any "vested" property rights in having its property zoned in the

---

[1]    The moving defendants are: the Town; defendants Steven Bass, Eddie Mae Barnes, Paul Feiner, Diana Juettner and Francis Sheehan (current and former members of the Town Board); defendants Steven Belasco, Malcolm Baumgarten, Eve Bunting-Smith, Nicholas Decicco, Laurence Doyle, Rohan Harrison and Daniel Rosenblum (current and former members of the Town's Zoning Board of Appeals); and Mark Stellato (the Town's former Commissioner of the Department of Community Development and Conservation).

CA District. To the contrary, S&R - - for reasons unknown - - failed to question a certificate of occupancy issued by the Town in 1999 or a demolition permit and certificate of completion issued to S&R in 2006, each of which identified the property as being in an *R-20 District*, not a CA District;

- Even if the Court overlooks S&R's failure to question these documents, under well-settled New York law, the Town cannot be estopped from enforcing its zoning laws based upon a draftsman's error which misidentified the Town's zoning districts;

- S&R's procedural due process claim fails because it received all the process it was due - - it had a full hearing before the Zoning Board of Appeals ("ZBA"), followed by the ZBA's written ruling upholding the correction of the Map;

- S&R's takings claim fails because the property clearly is still economically viable in an R-20 District;

- S&R's equal protection claim fails because S&R has not alleged, nor could it, that it has been treated differently than any "similarly situated" property owner in Town. Moreover, the Town also corrected the error on its Official Map to reflect the proper R-20 zoning of a second parcel - - not owned by S&R - - which was also affected by the 1997 drafting error;

- S&R simply failed to commence its Article 78 claim in a timely manner thirty days after the ZBA filed its November 1, 2007 decision with the Town Clerk;

- S&R's claims against the Town fails because S&R has not - - and cannot - - allege that the Map was corrected pursuant to an unconstitutional "custom or policy"; and

- S&R's Fair Housing Act claim fails because the Town's correction of the Map did not adversely impact families with children, as S&R claims.

For these reasons, the Court should grant defendants' motion to dismiss S&R's Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) with prejudice.

## STATEMENT OF FACTS

A.    **The Property**

S&R owns property at 1 Dromore Road (sometimes identified as 62 Dromore Road) in the

Edgemont section of the Town ("the Property").[2] (Dkt Entry #2, Amended Compl. ¶ 15).[3]  The

Property is located on the south side of Dromore Road across from the Greenburgh Nature Center

("the Nature Center") and to the east of Central Avenue, a primarily commercial road. (Id. ¶ 16).

When S&R purchased the Property on May 24, 2006, it was improved with a 3,200 sq. ft. single

family home and a swimming pool. (Id. ¶ 17).

**B.    Creation of the CA District and the Property's R-20 Zoning Status**

The Property has always been located in an R-20 District.  A principal use in the R-20

District is a single one-family detached dwelling per lot. Greenburgh Town Code §§ 285-

10(A)(1)(a); 285-12(A)(1).[4]

The CA District permits various office, commercial, residential, public and quasi-public

principal uses. Town Code § 285-29.1(B)(1-4).  Permitted uses in the CA District include

"multifamily developments of not more than four stories in height . . . at a maximum density of 35

bedrooms per acre." Town Code § 285-29.1(B)(3)(a).

The Town Board adopted the CA District by resolution on May 24, 1978 and the land

originally included as part of the CA District did ***not*** include the Property.  (Declaration of Carole

Walker, Exh. C).  Accordingly, the Town's Official Zoning Map adopted in June 1980 showed the

Property located in an R-20 District. (Madden Decl., Exh. H).  The Property has been shown in an

R-20 District on the revised Official Maps the Town has located (including the Map as revised in

---

[2]      The Property is identified on the Town's Tax Map (Volume 8, Section 31, Sheet 37B)
as Block 1692, parcels 14A, 70A and 70C. (Compl. ¶ 15).

[3]      Defendants shall refer herein to the Amended Complaint as "Compl."

[4]      The sections of the Town Code cited herein are attached as Exhibits A-G to the
Declaration of Thomas Madden submitted herewith.

January 1984, July 1987, January 1991 and July 1991). (Id., Exhs. I-L).[5] As shown on the Official Map, the westerly boundary of the Property is **not** located on Central Avenue, but abuts two parcels that front Central Avenue which are located within the CA District. (Id.).

C.     **The 1997 Creation of the Conservation District Zone**

On April 9, 1997, the Town Board enacted Local Law 5/97 which created a Conservation District overlay zone ("CD District") for certain properties near and abutting the Property. (Walker Decl., Exh. D). When the Town's Official Map was revised in 1997, a draftsman in the Town's engineering department mistakenly shifted the Property's westerly boundary to the east. This resulted in the Property being included within a CA District on the Town's Official Map, as revised in July 1997, November 1997, June 2000, April 2003 and June 2006. (Compl. ¶ 21).[6]

At no time was the Property's zoning changed by the Greenburgh Town Board from the R-20 District as **required** by Town Code §285-64 (Amendment Procedure). Indeed, consistent with the Property's R-20 zoning, on July 1, 1999, the Town issued a Certificate of Occupancy for the Property which identified it as located in the R-20 District. (Declaration of Elizabeth Gerrity, Exh. A).

D.     **S&R's Alleged Pre-Acquisition Due Diligence**

Before purchasing the Property in May 2006, S&R allegedly examined the Town's Official Maps as revised in 1997, 2000, 2003 and 2006. (Compl. ¶¶ 20, 21). Due to the drafting error, these maps showed the Property as located within the CA District, as opposed to the adjoining R-20 District. (Id.). S&R also claims that its architects examined the Official Maps and advised S&R that

---

[5]     The Town is currently attempting to locate its Official Map as revised in January 1996. If the Town is able to locate this map, it will be provided forthwith to the Court and counsel.

[6]     As an example of a Map depicting the drafting error, a copy of the Town's June 2006 Map is attached as Exhibit M to the Madden Decl.

the Property was located in the CA District. (Id. ¶¶ 22, 28).

S&R was also allegedly advised by Town personnel that: (1) the Property was in a CA District; and (2) the Town's Official Map "controls a particular parcel's zoning designation." (Id. ¶¶ 24, 28).  S&R does not allege that it (or any of its architects or other representatives) ever reviewed any of the pre-1997 Official Maps that showed the Property located in the R-20 District.

Allegedly based upon its belief that the Property was located in a CA District, S&R purchased the Property on May 24, 2006. (Id. ¶ 30).

**E.      S&R's Demolition of the Single-Family Home and Pool on the Property and the Town's Identification of the Property as Located in an R-20 District**

On or about October 10, 2006, S&R submitted to the Town's Building Department an Application for Plan Examination and Demolition Permit. (Gerrity Decl., Exh. B).  On December 1, 2006, the Town's Building Inspector issued a permit for S&R to demolish the single-family home on the Property. (Id., Exh. C).  The permit specifically identified the Property as located in an "**R-20 One Fam Res. Dist.**" (Id.) (emphasis added).  From December 6 to December 12, 2006, S&R demolished the home and swimming pool. (Compl. ¶ 37).

On December 15, 2006, the Town issued a Certificate of Completion for the demolition work.  (Compl. ¶ 37; Gerrity Decl., Exh. D).  The Certificate once again identified the Property as located in an "**R-20 One Fam Res. Dist.**" (Id.) (emphasis added).

**F.      Post-Demolition Meetings with Town Personnel**

S&R alleges that, on December 19, 2006, it had a "pre-submission" meeting with defendant Mark Stellato (the Town's Commissioner of Community Development and Conservation) and Thomas Madden (the Deputy Commissioner).  (Compl. ¶ 40).  S&R claims it presented a plan for

a four-story building with 37 two-bedroom units that would not require any variances from the CA District's requirements. (Id. ¶¶ 41, 42). S&R alleges that neither Commissioner Stellato, nor Deputy Commissioner Madden questioned whether the Property was located in a CA District. (Id. ¶ 44).

S&R alleges, however, that: (1) Commissioner Stellato advised that S&R's plan needed to be amended to provide for 5,000 square feet of open space within the building envelope; and (2) Deputy Madden was concerned that "steep slopes of over 20% . . . should be avoided." (Id. ¶ 44). Stellato and Madden also advised that "they would prefer more of a 'green' building." (Id. ¶ 45).

**G.    Opposition to Residential Development On Central Avenue and the Property**

There was significant opposition to residential development in the area of Central Avenue, including on the Property.

For example, after demolition began in December 2006, the Nature Center allegedly advised S&R that it would oppose developing the Property with more than one or two homes. (Compl. ¶ 38).

Likewise, the Town's Conservation Advisory Council ("CAC")[7] opposed developing the Property and, on December 18, 2006, voted to recommend that the Town assist the Nature Center in acquiring the Property. (Compl. ¶ 49). In a press release, the CAC stated that the Property:

> is a link between two larger open spaces; the Nature Center and the Edgemont High School Campus. When the Town established its Open Space Plan, the importance to local fauna of connecting open space was recognized as an element in identifying land to be acquired.
>
> Greenburgh is fortunate in having large underdeveloped swath that runs from the Metropolis County Club, to the Woodlands Campus, to

---

[7]    The CAC has nine-members and its purpose is to "advise the Town Board on matters affecting the preservation, development and use of the natural and man-made features and conditions of the Town insofar as scenic and aesthetic qualities, geological, biological and hydrological integrity and other environmental factors are concerned . . . ." Town Code §§ 520-2, 520-3(A).

> the Farm on 100A, to the Ridge Road Park, to Hart's Brook Park, to
> the Nature Center, Edgemont High School, and the Scarsdale Golf
> Club. Every effort should be made to maintain and enhance the
> connectivity between these sites.
>
> In addition the land would provide direct access from the Edgemont
> High School to the Nature Center. The high school and the Nature
> Center currently run joint programs.

(Walker Decl., Exh. E).

On January 1, 2007, defendant Town Supervisor Paul Feiner released his list of sixty-nine

(69) goals for 2007 on the Town's website. (Compl. ¶ 51). One of Supervisor Feiner's goals was:

> Present Town Board with options (including acquisition of
> property/conservation overlay zones/compromise) to protect
> Greenburgh Nature Center from development that can have a negative
> impact on wildlife/habitats/eco system. Reach out to
> state/county/private individuals to determine if a partnership can be
> established regarding possible acquisition of property.

(Walker Decl., Exh. F). Supervisor Feiner's goals do not mention either the Property or S&R.

On January 4, 2007, Supervisor Feiner stated on his internet blog that he would ask for a

hearing for a moratorium on residential development along Central Avenue. (Compl. ¶ 52).

Supervisor Feiner outlined the concerns raised by Town citizens:

> In recent months Edgemont civic associations have requested a
> moratorium on residential development along the Central Ave
> corridor. The concern: Residential development will have more of an
> impact on the school district than commercial development. During
> a moratorium a study of the Central Ave corridor would take place.
> At the conclusion of the study a determination would be made
> whether a zoning change should be approved.
>
> \* \* \*
>
> Some people do not support the moratorium. Holding a public
> hearing on this matter will provide all residents of Edgemont and
> Greenburgh with the opportunity to express their views.

(Walker Decl., Exh. G).   The moratorium referenced by Supervisor Feiner was not limited to the

Property, but applied to the entire "Central Avenue corridor." (Id.).

      S&R alleges that, on January 8, 2007, Commissioner Stellato submitted to the Town Board

a proposed moratorium on residential development for the entire CA District. (Compl. ¶ 55).   A

release issued by Supervisor Feiner outlined the reasons for Stellato's recommendation:

> Mark Stellato, Commissioner of Planning, has recommended a
> development moratorium on site plans and subdivisions for
> residential development in the Central Ave mixed use impact district
> be established so that the town and its consultants can fully study the
> matter and make recommendations back to the Town Board.  In the
> last 15 years the Edgemont school district's enrollment has increased
> from 1,355 to 1,923, an increase [of] 42%.  The increase in school
> population has required the need for additional educational facilities
> not contemplated when the current plan was developed and zoning
> enacted.
>
> The portion of Central Ave served by the Edgemont school district
> includes 909 apartments in various multifamily dwellings,
> representing 32% of [the] total residential component of the school
> district and a 60 percent increase in the number of residential units
> from 1976.
>
> Other factors besides increased enrollment: no major roadway
> infrastructure improvements undertaken since the adoption of the
> 1976 plan.  In 2000, to accommodate a growing student population,
> the Edgemont School district undertook a capital improvement
> program which expanded facilities at all 3 schools.  Those facilities
> are at full capacity.
>
> I support the proposed moratorium and hope that the Town Board
> will schedule a hearing date this Wednesday night – our next Town
> Board meeting.  This proposed moratorium has the support of
> Edgemont civic leaders.

(Walker Decl., Exh. H).

      On January 10, 2007, the Town Board held a meeting at which the Edgemont Community

Council ("ECC"),[8] Greenridge Civic Association ("GCA") (an ECC member), the Nature Center, and Bill Greenawalt (who S&R identifies as the "Chairman of the Parks Commission")[9] voiced support for the moratorium. (Compl. ¶ 57).

On January 24, 2007, S&R alleges that the Town Board held a public hearing on the proposed moratorium at which:

- defendant Stellato supported the moratorium, stating that residential development in the CA District should be 50% less dense; and

- the ECC supported the moratorium, stating there were already enough multi-family dwellings in Town and that the number of school children in the District was exceeding expectations. The ECC also expressed concern about the Town's infrastructure, lack of sidewalks, traffic and burdens on taxpayers in the Edgemont School District.

(Compl. ¶ 63).

## H.   S&R's Application for Site Plan Approval and the Town's Discovery of the Error on the Town's Official Map

On February 2, 2007, S&R submitted an application for site plan approval for development of the Property with a three-story building containing 37 two-bedroom units, claiming the application met all requirements of the CA District.  (Compl. ¶¶ 69, 73).

On February 14, 2007, S&R met with Deputy Commissioner Madden regarding its application. (Id. ¶ 73). Mr. Madden allegedly did not question the Property's CA District status, but identified the following issues: (1) the creation of open space and a tree protection program; (2) the

---

[8]     According to its website, the ECC "was founded in 1947 to determine community opinion on civic matters, coordinate community action thereon, and to plan and promote the general welfare of the Edgemont community." See www.edgemontcommunitycouncil.org/abouttheecc.html.

[9]     According to Westchester County's website, Mr. Greenawalt is Chairman of the County  Parks,  Recreation  and  Conservation  Board.  See www.westchestergov.com/parks/CitizenBoards.htm

possibility that steep slope disturbances on the Property might require SEQRA review; (3) the possible need for a traffic study by S&R; (4) the possible need to include a truck loading dock; (5) the need for submission of a lighting plan showing Con Ed easements; and (6) the identification of drainage channels. Id.

While reviewing S&R's site plan, the Town reviewed the zoning history of the Property. (Walker Decl., Exh. B).  During its review, the Town discovered the 1997 drafting error including the Property in a CA District on the Official Map. Id.  The Town also identified a second parcel located near the Property (450-460 Central Avenue) which had incorrectly been included in the CA District. (Id., Exh. J).

On February 26, 2007, defendant Stellato advised counsel for S&R that the Property was located in an R-20 District, not a CA District. (Compl. ¶ 76; Walker Decl., Exh. I).

On February 27, 2007, defendant Stellato advised Town Engineer Michael Lepre that 450-460 Central Avenue and the Property erroneously appeared on the Town's Official Map as located in the CA District, rather than in the R-20 District. (Compl. ¶ 77; Walker Decl., Exh. J).  Stellato requested that the Town Engineer correct the map. Id.  The Town's Official Map was then corrected to show both properties located in the R-20 District.  (Madden Decl., Exh. N).

After defendant Stellato's February 26, 2007 determination, S&R alleges that no further steps were taken to enact a moratorium on residential development in the CA District.  (Compl. ¶ 80).  In fact, no such moratorium has been enacted.

**I.     S&R's Appeal to the Town's Zoning Board of Appeals**

On April 26, 2007, S&R appealed to the ZBA seeking reversal of defendant Stellato's determination that the Property was located in an R-20 District, not the CA District. (Compl. ¶ 85).

S&R was represented by counsel before the ZBA and submitted several supporting affidavits and a memorandum of law to the ZBA. The ZBA held hearings on S&R's appeal on July 19, 2007, August 16, 2007 and September 20, 2007 and the ZBA announced its decision on October 18, 2007.

On November 1, 2007, the ZBA filed its written decision denying S&R's appeal with the Town Clerk. (Walker Decl., Exh. K). The decision was also e-mailed to S&R and its counsel on that day. Id. The ZBA concluded that:

- As a threshold issue, it was not a legislative body and lacked authority to declare an Official Map invalid. (Id., p. 2);

- The Town's Official Maps prior to adoption of the CD District in 1997 identified the Property in a R-20 District, not a CA District. (Id.);

- The Town's review of the "the Town Board minutes for the relevant period establishes that the Town Board never rezoned the property to CA from its former designation at R-20." (Id.);

- The February 2007 revision to the Official Map "did not 'rezone' applicant's property; rather, it merely constituted a ministerial correction of an error in the previous maps." (Id.); and

- The Property "was never zoned CA by the legislative body, and therefore it remains in the R-20 District in which it was placed by the legislature in 1980." (Id., p. 3).

The ZBA noted that it had adjourned the hearing to permit S&R to respond to the Town's assertion that no resolution or local law had been passed rezoning the Property to a CA District. (Id., pp.2, 3). S&R did not respond to this assertion, but instead relied solely upon the post-1997 maps that showed the Property in a CA District. Id.

The ZBA further found "significant flaws" in S&R's argument that it relied upon the CA District designation because, *inter alia*:

- the certificate of occupancy issued in July 1999 "would have been part of any

title search" and showed the Property as located in an R-20 District; and

● the demolition permit issued for the Property on December 1, 2006 identified
it as located in an R–20 District.

(Id., p. 3).  The ZBA noted that "at no time did [S&R] question or contest" the demolition permit's

identification of the Property as R-20. Id.

On November 9, 2007, the ZBA filed an amended decision denying S&R's appeal with the

Town Clerk. (Compl. ¶ 90; Walker Decl., Exh. L).  The November 9 decision is substantively

identical to the November 1 decision.  The November 9 amendment merely deleted : (1) a reference

to "Sheet 31" in the "Property Location" section on page 1 of the November 1 decision; (2) a

reference on page 1 of the November 1 decision to Member Baumgarten (who was absent when the

decision was announced by the Board at its October 18, 2007 hearing) as having voted "aye" in favor

of denying S&R's appeal; and (3) a reference on page 4 of the November 1 decision to Member

Baumgarten as the member who seconded a motion that S&R's application did not require SEQRA

review and replaced him with Member Doyle. (Walker Decl., Exh. L).

**J.    S&R's Claims in this Lawsuit**

S&R filed its Complaint in this Court on December 7, 2007. (Dkt Entry #1).  S&R filed an

Amended Complaint on December 20, 2007. (Dkt Entry #2).

S&R's 134-paragraph Amended Complaint asserts the following claims:

(1)    violations of "Due Process Clauses and Just Compensation
Clause" (First and Second Claims for Relief);[10]

(2)    violations of the Equal Protection Clause of the Fourteenth

_____

[10]    Defendants presume S&R is asserting violations of both its substantive and
procedural due process rights.

Amendment (Third Claim for Relief);[11]

(3)     Declaratory Judgment pursuant to 28 U.S.C. § 2201 (Fourth
Claim for Relief);

(4)     relief under N.Y. C.P.L.R. Article 78 (Fifth Claim for Relief);
and

(5)     violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq.
("FHA") (Sixth Claim for Relief).

## LEGAL ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Comm., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-1965.

In deciding a Rule 12(b)(6) motion, the court "may consider documents referenced in the complaint, as well as documents that the plaintiff relied upon in bringing the complaint and matters of which judicial notice may be taken." Marshall v. Grant, 521 F. Supp. 2d 240, 243 (E.D.N.Y. 2007) (citations omitted); see also ATSI Comm., 493 F.3d at 98 (on 12(b)(6) motion, court may consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").  The court may also consider matters of public record, such as local laws, decisions and records of local agencies, and pleadings in other actions.  See Pani v. Empire Blue Cross Blue

---

[11]     S&R's constitutional claims are asserted pursuant to 42 U.S.C. § 1983. "[Section] 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights." Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989).

Shield, 152 F.3d 67, 75 (2d Cir. 1998); Moore U.S.A., Inc. v. Std. Register Co., 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001).[12]

The standard on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is "substantively identical" to the 12(b)(6) standard, except that plaintiff has the burden of establishing jurisdiction when opposing a 12(b)(1) motion. Lerner v. Fleet Bank, 318 F.3d 113, 128-129 (2d Cir. 2003); see also Baruch v. Schmiegelow, 175 Fed. Appx. 422 (2d Cir. 2006).

## POINT I

### S&R'S CONSTITUTIONAL CLAIMS ARE NOT RIPE
### AND THE COURT LACKS SUBJECT MATTER JURISDICTION

S&R's substantive and procedural due process, equal protection and takings claims must be dismissed because S&R cannot establish that they are ripe. Accordingly, the Court lacks subject matter jurisdiction and should dismiss these claims pursuant to Rule 12(b)(1).

"Ripeness is a jurisdictional inquiry." Murphy v. New Milford Zoning Comm., 402 F.3d 342, 347 (2d Cir. 2005); see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003) (considering ripeness on Rule 12(b)(1) motion). In Williamson County Regional Planning Comm. v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court "developed specific ripeness requirements applicable to land use disputes." Murphy, 402 F.3d at 348.

For a land-use dispute to be "ripe", Williamson requires that: (1) the state regulatory entity has rendered a "final decision"; and (2) plaintiff has sought compensation by means of any available state procedure. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d

---

[12]    On defendants' motion, this Court may consider: the documents referenced in S&R's complaint and relied upon by S&R; the Town's local laws and resolutions; the Town's Official Maps; the documents filed with the ZBA; and public records on file with the Town Building Department. See Gerrity, Walker and Madden Decls.

Cir. 2002); <u>Southview Assoc., Ltd. v. Bongartz</u>, 980 F.2d 84, 95 (2d Cir. 1992).[13]  S&R cannot

satisfy either of these jurisdictional requirements.

**A.      S&R Has Not Obtained a "Final Decision" Concerning the Use of the Property**

This Court has held that "in order to have a final decision, a development plan must be

submitted, considered, and rejected by the governmental entity." <u>Goldfine v. Kelly</u>, 80 F. Supp. 2d

153, 159 (S.D.N.Y. 2000) (Conner, J.).  Without a final decision, "it is impossible to tell whether

the land retains any reasonable beneficial use" or "whether plaintiff has been deprived of property,

arbitrarily or otherwise . . . ." <u>Id.</u>

Indeed, the Second Circuit has held that <u>Williamson</u>'s "final decision" requirement

"conditions federal review on a property owner having submitted ***at least one meaningful***

***application for a variance.***" <u>Murphy</u>, 402 F.3d at 348 (emphasis added).[14]  The Second Circuit

identified four reasons for this critical jurisdictional requirement: (1) it "aids in the development of

full record"; (2) "only if a property owner has exhausted the variance process will a court know

precisely how a regulation will be applied to a particular parcel"; (3) "a variance might provide the

_____

[13]      Although <u>Williamson</u> was decided in the context of a takings claim, its two-prong test also applies to "equal protection and due process claims asserted in the context of land use challenges." <u>Dougherty</u>, 282 F.3d at 88; <u>see also</u> <u>Goldfine</u>, 80 F. Supp. 2d at 159 (Conner, J.).

[14]      Before the Second Circuit's 2005 decision in <u>Murphy</u>, several district courts have held that there is no "final decision" unless the landowner has been denied a variance. <u>See</u> <u>Marathon Outdoor, LLC v. Vesconti</u>, 107 F. Supp. 2d 355, 362 (S.D.N.Y. 2000) (quoting <u>Rivervale Realty Co. v. Town of Orangetown</u>, 816 F. Supp. 937, 942 (S.D.N.Y. 1993)) ("application for a variance is generally the procedural predicate for the final decision upon which the ripeness inquiry rests."); <u>Kittay v. Giuliani</u>, 112 F. Supp. 2d 342, 348-39 (S.D.N.Y. 2000), <u>aff'd</u>, 252 F.3d 645 (2d Cir. 2001) ("until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question e.g., that no variances or permits will be granted, a takings claim is premature."); <u>Xikis v. City of New York</u>, 1990 U.S. Dist LEXIS 13715 at *16 (E.D.N.Y. 1990) ("a majority of the circuit courts have held that . . . a plaintiff must seek a variance before [a substantive due process] or an equal protection claim is ripe for adjudication.").

relief the property owner seeks without requiring judicial entanglement in constitutional disputes";[15] and (4) it "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." Murphy, 402 F.3d at 348.

Here, S&R does not - - and cannot - - allege that the Town has decided *any* application by S&R for use of the Property, much less an application for a variance from the R-20 District's requirement.[16] Accordingly, S&R's lawsuit runs afoul of each requirement and concern the Second Circuit identified in Murphy: (1) this Court has nothing resembling a "full record" concerning how the Property can be used; (2) because S&R has never sought a variance, the Court has no idea how the R-20 District's requirements will be applied to the Property; (3) a variance, if granted, could provide the relief S&R seeks in this lawsuit; and (4) S&R is embroiling this Court in a local land use dispute before the Town has decided any application for development of the Property. Murphy, 402 F.3d at 348.

Further, S&R cannot avoid the requirement that it seek a variance from the R-20 District's

---

[15]    See also Kittay, 112 F. Supp. 2d at 349 (citing Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc., 452 U.S. 264, 297 (1981)) ("If plaintiff were to seek administrative relief under the [variance or permit] procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions.").

[16]    The Town does not concede that S&R would have satisfied the "final decision" requirement of Williamson by applying for a variance. Having failed to seek a variance, however, S&R plainly has not taken even the most basic step toward obtaining a "final decision." See Murphy, 402 F.3d at 348 (plaintiff must submit "at least one" variance application); see also Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1501 (9th Cir. 1990) (citing MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 351-53 (1986)) ("At a minimum, the landowner must submit one formal development plan and seek a variance" and noting that subsequent submissions may be required to meet "final decision" requirement). For example, in addition to seeking a variance, S&R can also petition the Town Board to have the Property rezoned from R-20 to CA. See Town Code § 285-64(A). The Town, therefore, reserves its right to argue that S&R must do more than seek a variance in order to obtain a "final decision."

requirements simply because it believes that Town's determination that the Property is located in that zone is unconstitutional. Several cases confirm that S&R is still required to - - at the very minimum - - seek a variance before it has a "final decision."[17] For example, in Kittay, plaintiff claimed that regulations applicable to his watershed property were unconstitutional. 112 F.Supp.2d at 347. However, because "not one application ha[d] been made for a permit or variance" from those allegedly unconstitutional regulations, the court dismissed the complaint because there was no "final decision." Id. at 348-50.

In Cedarwood Land Planning v. Town of Schodack, 954 F. Supp. 513, 517 (N.D.N.Y. 1997), aff'd, U.S. App. LEXIS 22157 (2d Cir. 1998), the Town's Residential Agricultural ("RA") district had a 60,000 square foot minimum lot size for single family homes. Prior to 1992, a "density bonus provision" reduced the minimum size to 20,000 square feet for multiple dwellings served by central sewer. Id. In 1987, taking advantage of the bonus provision, plaintiff applied to construct 116 units on its RA district property. Id. at 518. In 1992, the Town enacted Local Law #5 which eliminated the bonus provision, requiring plaintiff to reduce the number of proposed units to 31 to meet the 60,000 square foot lot minimum. Id. at 519. Plaintiff filed suit, claiming the Town's enactment of Local Law #5 was unconstitutional. Id. at 519-20. However, because plaintiff had not sought a variance from the 60,000 square foot requirement after Local Law #5 was enacted, the court held that plaintiff had no "final decision" and dismissed plaintiff's takings claim. Id. at 525-26.[18]

In Xikis v. City of New York, 1990 U.S. Dist. LEXIS 13715 at *4 (E.D.N.Y. 1990), the

---

[17]    The Town Code expressly authorizes S&R to seek a variance from the ZBA. Town Code § 285-48(B).

[18]    The court dismissed plaintiff's due process and equal protection claims on other grounds. Cedarwood Land Planning, 954 F. Supp. at 521-525.

City's Board of Estimate denied plaintiff's application to rezone his property from residential to commercial. Plaintiff filed suit alleging the denial of his application was a taking and violated due process and equal protection. Id. at ** 5-6. Because plaintiff failed to seek a variance from the residential zone's requirements, the court held that plaintiff had not obtained a "final decision" and dismissed the complaint. Id. at ** 7-18.

For these reasons, S&R is required to, but did not, seek a variance from the R-20 District's requirements. See Murphy, *supra*; Kitty, *supra*, Cedarwood Land Planning, *supra*; Xikis, *supra*. Indeed, it has not obtained *any* decision at all on how the Property can be used. As such, S&R's substantive and procedural due process, equal protection and takings claims are not ripe because S&R has no "final decision" on how it may use the Property in the R-20 District. Accordingly, the Court should dismiss those claims. See Southview Assocs., 980 F.2d at 99 (dismissing complaint for lack of ripeness where plaintiff had no "final decision"); Goldfine, 80 F.Supp.2d at 158-61 (Conner, J.) (same).

**B.    S&R Has Failed to Seek Compensation In New York State Court**

Under the second Williamson requirement, if the state provides "a reasonable, certain and adequate provision for compensation, the plaintiff must have sought compensation from the state before its claim in federal court would be ripe." Goldfine, 80 F. Supp. 2d at 159 (Conner, J.) (citing Williamson, 473 U.S. at 186 (1985)). This requirement applies to S&R's substantive and procedural due process, equal protection and takings claims. Id. at 161; Rivervale Realty Co., 816 F. Supp. at 943 (just compensation requirement applicable "with respect to due process, equal protection and takings claims, where, as in New York, the state system provides appropriate means for seeking compensation."); see also Orange Lake Assocs. v. Kirkpatrick, 21 F.3d 1214, 1225 (2d Cir. 1994)

(requirement applicable to substantive due process claims).[19]

In land use cases (and other cases involving property rights), New York law provides well-established procedures for pursuing relief in state court under Article 78 and New York's Eminent Domain Procedure Law § 101 *et seq.* ("EDPL") or by filing an action for declaratory judgment. Accordingly, the federal courts have uniformly dismissed constitutional claims where the plaintiff has failed to avail itself of these state procedures. See, e.g., Orange Lake Assocs., 21 F.3d at 1224 (dismissing due process claim where plaintiff failed to pursue state Article 78 or declaratory judgment claim); Country View Estates@Ridge, LLC v. Town of Brookhaven, 2006 U.S. Dist. LEXIS 91981 at ** 38-40 (E.D.N.Y. 2006) (dismissing due process, equal protection and takings claims); Burke v. Town of E. Hampton, 2001 U.S. Dist. LEXIS 22505 at ** 32-33 (E.D.N.Y. 2001) (dismissing takings claim for failure to pursue Article 78 or EDPL claim); Frooks v. Town of Cortlandt, 997 F. Supp. 438, 452-53 (S.D.N.Y. 1998) (Conner, J.), aff'd, 182 F.3d 899 (2d Cir. 1999) (same); Economic Opp. Commn of Nassau County v. County of Nassau, 47 F. Supp. 2d 353, 368 (E.D.N.Y. 1999) (same); DeBari v. Town of Middletown, 9 F. Supp. 2d 156, 162 (N.D.N.Y. 1998) (same); see also Goldfine, *supra* (finding that due process, equal protection and takings claims were not ripe where state court proceeding was pending).

Here, S&R does not allege that it has pursued any action in state court before filing this federal lawsuit. Indeed, the fact that S&R has included Article 78 and declaratory judgment claims

---

[19]     In Southview Assocs., the Second Circuit held that Williamson's "just compensation" requirement applies to substantive due process claims that a "regulation that goes so far that it has the same effect as a taking . . . ." 980 F.2d at 95. It does not apply to a substantive due process claim "premised on arbitrary and capricious government conduct." Id. S&R's due process claims are devoid of allegation that the Town acted in an arbitrary or capricious manner. (Compl. ¶¶ 93-106). Accordingly, the Court should conclude that the "just compensation" requirement applies to S&R's substantive due process claim.

in its Amended Complaint appears to confirm that it has not filed a state court action. Because S&R

has not met Williamson's second prong, the Court should dismiss S&R's substantive and procedural

due process, equal protection and takings claims.

## POINT II

### S&R'S DUE PROCESS AND TAKINGS CLAIMS MUST ALSO BE DISMISSED BECAUSE IT HAS NO "PROPERTY INTEREST" IN THE ZONING CLASSIFICATION OF THE PROPERTY AS A CA DISTRICT

To establish its takings and due process claims (both substantive and procedural), S&R must

first establish a constitutionally protected "property interest." Zahra v. Town of Southold, 48 F.3d

674, 680 (2d Cir. 1995); Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 391

(E.D.N.Y. 2000); Frooks, 997 F. Supp. at 452. "[T]he existence of a federally protectable property

right is an issue of law for the court." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir.

1999); Honess 52 Corp. v. Town of Fishkill, 1 F. Supp. 2d 294, 303 (S.D.N.Y. 1998) (Conner, J.).

As a matter of law, S&R lacks a federally protected property interest in having the Property zoned

in a CA District.

**A.    Under New York Law, There is No Property Interest In a Particular Zoning Classification**

This Court has held that it is "well-established under New York law that a landowner has no

constitutionally protected interest in a particular zoning classification." Frooks, 997 F. Supp. at 450

(Conner, J.) (citing Ellentuck v. Klein, 570 F.2d 414, 429 (2d Cir. 1978)); see also Orange Lake

Assocs., 21 F.3d at 1224-1225 (landowner has "no cognizable vested interest in the existing zoning

of its property."); Vertical Broad, 84 F. Supp. 2d at 393 ("There is no right to an existing

classification of one's property."). "Nor are there any assurances that zoning regulations will remain

unchanged." <u>Vertical Broad</u>, 84 F. Supp. 2d at 393 (citing <u>Sag Harbor Port Associates v. Village of</u>

<u>Sag Harbor</u>, 21 F. Supp. 2d 179, 183-184 (E.D.N.Y. 1998), <u>aff'd</u>, 182 F.3d 901 (2d Cir. 1999)); <u>see</u>

<u>also</u> <u>Alzamora v. Chester</u>, 492 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) (Conner, J.) (same).

As such, the courts have dismissed constitutional claims arising from the zoning

classification of plaintiff's property. For example, in <u>Orange Lake Associates</u>, plaintiff claimed that

the rezoning of his property to reduce residential development density was unconstitutional. 21 F.3d

at 1225. The Second Circuit affirmed dismissal of the claim because plaintiff had no cognizable

interest in the property's existing zoning. <u>Id.</u> Likewise, courts have dismissed a plaintiff's claim that

it has a property right to have the zoning of its property changed. <u>See</u> <u>Vertical Broad</u>, 84 F. Supp.

2d at 393 (dismissing due process claims); <u>Frooks</u>, 997 F. Supp. at 450 (same).

In this case, as a matter of law, S&R simply has no constitutionally protected property

interest in having the Property located in a CA District. Accordingly, the court should dismiss

S&R's due process and takings claims without further inquiry. <u>See</u> <u>Vertical Broad</u>, 84 F. Supp. 2d

at 392 (where plaintiff has no property interest, "due process claims may be rejected without the

necessity of exploring whether the local authority has acted in an arbitrary manner.").

**B.**     <u>**S&R Has Not Obtained a "Vested" Property Right in the CA District Classification**</u>

In limited circumstances under New York law - - none of which apply here - - a property

right in an existing zoning designation may "vest." The landowner, however, must establish that it

has "undertaken substantial construction and . . . made substantial expenditures prior to the

enactment of the more restrictive zoning ordinance." <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163

F.3d 124, 131 (2d Cir. 1998); <u>Alzamora</u>, 492 F. Supp. 2d at 430 (Conner, J.) (same). The

construction must occur as part of a "project *permitted under an earlier zoning classification.*" <u>DLC</u>

Mgmt. Corp., 163 F.3d at 130 (emphasis added); see also Town of Orangetown v. Magee, 88 N.Y.2d 41, 47, 665 N.E.2d 1061, 1064, 643 N.Y.S.2d 21, 24 (1996) ("a vested property right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose of which the permit was granted by effecting substantial changes and incurring substantial expense."). The landowner must additionally show that, after it started construction, it "unquestionably would have received the limited future authorizations necessary to complete the project." Bower Assocs. v. Town of Pleasant Valley, 2 N.Y.3d 617, 628, 814 N.E.2d 410, 416, 781 N.Y.S.2d 240 (2004) (citing Magee, 88 N.Y.2d at 52-53).

S&R fails each of these requirements and cannot establish any "vested" property rights.

## 1. S&R Has Not Performed Any Work Permitted under the CA District

S&R clearly has no vested rights in the CA District classification. The only work S&R performed at the Property was authorized by a demolition permit that identified the Property as being in an *R-20 District.* (Gerrity Decl., Exh. C). When that work was finished, the Town issued a Certification of Completion that again identified the Property in an *R-20 District.* (Id., Exh. D).

S&R could not have acquired vested rights in the supposed CA District status of the Property, because the only work it performed was permitted (and then certified as complete) by the Town with an express R-20 District designation for the Property. In fact, the Town has *never* issued S&R any permit or license to perform any work on the Property which identified the Property as located in a CA District. See DLC Mgmt Corp., 163 F.3d at 130 (work necessary to trigger vested interest must be "permitted under an earlier zoning classification"); see also Rudolph Steiner Fellowship Found. v. De Luccia, 90 N.Y.2d 453, 460-61, 685 N.E.2d 192, 662 N.Y.S.2d 411 (1997) (no vested right created where landowner's "expenditures were not made in reliance upon a validly issued permit.").

Accordingly, S&R has not performed the substantial construction work necessary to obtain a vested property interest in having the Property located in a CA District.

**2.    *S&R Would Not "Unquestionably" Have Received Authorization for its Proposed CA District Site Plan***

Even if S&R had performed work under a permit identifying the Property in a CA District, it still cannot establish a vested property interest because it is unable show that it "***unquestionably*** would have received the limited future authorizations necessary" for the site plan it submitted to the Town. See Bower Assocs., 2 N.Y.3d at 628 (emphasis added). S&R's site plan application was subject to review by the Town Planning Board under Town Code § 285-50 *et seq.*[20] The Board had discretion to grant or deny that application after considering numerous factors, including whether S&R's plan would: (1) "have a harmonious relationship with the existing use of contiguous land and of adjacent neighborhoods;" and (2) be in the best interest of "the health, safety, welfare, comfort and convenience of the public." Town Code § 285-51. The Planning Board was also obligated to assure that "adjacent and neighboring properties shall be protected against . . . objectionable features." Id., § 285-54(K).

No New York case appears to have addressed how a landowner can show that it would "unquestionably" have received the future authorizations necessary to trigger a "vested" property interest. However, the Second Circuit applies a "strict entitlement test" to determine whether a landowner has a property interest in a particular land use application. See DLC Mgmt. Corp., 163 F.3d at 130. This focuses on whether the owner has a "'legitimate claim of entitlement' to have its

---

[20]    Because the Property is 2.34 acres, the Planning Board would review S&R's application. Town Code § 285-53(B). The Town Board reviews site plan applications that concern property five acres or more. Id. § 285-53(A).

application granted." <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 504 (2d Cir. 2001). A "legitimate claim of entitlement" exists only when "there is either a certainty or a very strong likelihood" the application will be granted. <u>Id.</u> The test focuses "on the degree of discretion enjoyed by the issuing authority, not on the estimated probability that the authority will act favorably in a particular case." <u>RRI Realty Corp. v. Incorporated Village of Southampton</u>, 870 F.2d 911, 918 (2d Cir. 1989). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of local agency to deny issuance suffices to defeat the existence of a federally protected property interest." <u>Id.</u>; <u>see</u> <u>Honess 52 Corp.</u>, 1 F. Supp.2d at 302 (Conner, J.) ("the fact that an application *could have been* denied on non-arbitrary grounds defeats a federal due process claim.") (emphasis added).

Under the "strict entitlement test," a landowner has no property interest in its site plan application, where a municipality has discretion to grant or deny the application, including on the basis of the public's health, welfare and safety. <u>See</u> <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 192-93 (2d Cir. 1994); <u>Dean Tarry Corp. v. Friedlander</u>, 826 F.2d 210, 213-14 (2d Cir. 1987). The Town Code affords this very discretion to the Planning Board in reviewing S&R's site plan application. S&R, therefore, clearly has no property interest in having its site plan application granted. <u>See</u> <u>RRI Realty Corp.</u>, 870 F.2d at 918; <u>Honess 52 Corp.</u>, 1 F. Supp.2d at 302. Indeed, S&R's complaint confirms there were objections by abutting landowners (the Nature Center), citizen groups (ECC and GCA) and Town officials (Supervisor Feiner and the CAC) to S&R's proposed development on the Property and to further residential development anywhere in the CA District. (Compl. ¶¶ 49, 51, 52, 57). Deputy Commissioner Madden also identified numerous problems with S&R's application after it is was submitted. (<u>Id.</u> ¶ 73).

Accordingly, because the Planning Board had discretion to deny S&R's site plan application (and because there were numerous objections to and problems with the application), S&R cannot claim that it "unquestionably" would have been entitled to site plan approval for purposes of establishing a "vested" property interest under New York law. See Bower Assocs., 2 N.Y.3d at 628.

### 3.   The Drafting Error on the Town's Official Map Does Not Create A Vested Property Interest

To the extent S&R contends it has vested property rights because it relied upon the post-1997 Official Maps showing the Property located in a CA District, such a claim is likewise baseless. (Compl.¶ 30).   Under New York law, vested property rights cannot be created through errors by a municipality. See, e.g., Gottlieb v. Village of Irvington, 69 F. Supp.2d 553, 556 (S.D.N.Y. 1999) ("A landowner does not have a vested property right to a building permit issued erroneously by a building inspector, and there can be no estoppel against the government in such a situation.") (citing Parkview Assocs. v. City of New York, 71 N.Y.2d 274, 525 N.Y.S.2d 176, 519 N.E.2d 1372 (1988)); see also Bain v. Town of Argyle, 499 F. Supp. 2d 192, 195 (N.D.N.Y. 2007) (same); Universal Outdoor, Inc. v. City of New Rochelle, 286 F. Supp. 2d 268, 277 (S.D.N.Y. 2003) (same).

For example, in Parkview, the City of New York revoked a building permit it had issued based on its erroneous interpretation the City's Zoning Map. 71 N.Y.2d at 278.  The Court of Appeals held that the City was entitled to revoke the permit because "estoppel is not available against a local government unit for the purpose of ratifying an administrative error" and "a building permit could not confer rights in contravention of the zoning laws." Id. at 282. The Court further held that "even if there was a municipal error in one map and in the mistaken administrative issuance" of the permit, estoppel was nonetheless inapplicable because those factors were

outweighed by the fact that "a good faith inquirer" could have discovered the errors. Id.

It cannot tenably be disputed that: (1) the Property consistently appeared in an R-20 District on the Town's pre-1997 Official Maps. (Madden Decl., Exhs. H-L); (2) at no time was the zoning status of the Property amended in accordance with Town Code §285-64 to a CA District; and (3) Local Law 5/97, which created the CD District overlay and led to the 1997 revision of the Official Map, did not rezone the Property from R-20. (Walker Decl., Exh. D).[21]  In revising the Official Map in 1997, the draftsman simply erred in including the Property (and a second parcel - - 450-460 Central Avene) in the CA District, rather than the R-20 District.  This drafting error, as a matter of law, cannot either: (1) confer vested property rights on S&R to a CA District zoning status; or (2) estop the Town from correcting the Official Map to reflect the Property's correct zoning status in the R-20 District.[22]

Moreover, S&R can have no vested property interest because, like the property owner in Parkview, S&R - - had it acted as a "good faith inquirer" - - could have discovered the error in the Official Map.  Even before it purchased the Property, S&R - - if it was exercising due diligence - - should have discovered that the certificate of occupancy issued on July 1, 1999 (which was publicly

---

[21]     S&R cites Town Code § 285-7(A) which states that the Official Map "shall be the final authority as to the current zoning classification of any land . . . ." (Compl. ¶ 18).  This section cannot reasonably be interpreted as binding the Town to erroneous district boundary alterations not approved by the Town Board under Town Code § 285-64.  Such an interpretation would be contrary to Parkview and the other cases holding that municipalities are not estopped by administrative errors.  Moreover, Town Code § 285-7(A) expressly states that the Official Map can be amended only "in the same manner as any other part of this chapter." (i.e., by amendment pursuant to § 285-64).

[22]     To the extent that S&R alleges that Town officials stated that the Property was in a CA District, those statements do not create a property interest because they were also based upon the erroneous post-1997 maps.  (See Compl. ¶ 24).  See Frooks, 997 F. Supp. at 450 (statements by Town officials were irrelevant to whether landowner had property interest).

available in the Building Department) identified the Property as being in an R-20 District. (Gerrity Decl., Exh. A). Plainly, this should have alerted S&R that the Property's CA District classification on the Official Map (at least as of 1999) may have been incorrect and that further investigation was warranted.[23] Indeed, S&R appears to have performed no further investigation into the Property's zoning status after it received both a demolition permit and Certification of Completion in 2006 which expressly stated the Property was in an R-20 District.

For these reasons, although New York law can confer vested property rights in a zoning classification in narrow circumstances, S&R cannot establish any of the prerequisites to such a right.

**C.    Whether the Town Acted Improperly In Correcting the Official Map Is Irrelevant**

S&R attempts to prop up its constitutional claims by alleging that the Town acted "without the necessary legislative action required by law" in determining that the Property was located in a R-20 District, not a CA District. (Compl. ¶ 2(b)). Even if S&R were correct - - which it is not[24] - - this is irrelevant to whether S&R has a cognizable property interest.

As this Court has held: "even if a defendant engages in improper conduct, a substantive due process claim will not lie in the absence of a protected property interest." Honess 52 Corp., 1 F.

---

[23]    Surely, the error created during the 1997 revision could have been discovered if S&R raised this issue with the Town before it purchased the Property or if S&R had independently reviewed the pre-1997 maps and the Town's resolutions to see if the Property had been zoned in the CA District. Although S&R claims that the pre-1997 maps were "not available for examination" (Compl. ¶ 21), surely a diligent search or request to the Town would have enabled S&R to review those maps.

[24]    Because the Official Map could be amended only by the Town Board (Town Code § 285-64) - - not simply by an unauthorized drafting mistake - - the Property was at all times zoned R-20. It was never rezoned from its original R-20 designation to CA. As the Property was never properly zoned in a CA District, there was no need for "legislative action" by the Town Board to simply correct the Map to show the Property's proper location in an R-20 District.

Supp. 2d at 305  (Conner, J.) (citing RRI Realty Corp., 870 F.2d at 918-19, and Yale Auto Parts, Inc.

v. Johnson, 758 F.2d 54, 59-60 (2d Cir. 1985)).  As such, in Yale Auto Parts, 758 F.2d at 59, the

Court affirmed dismissal of plaintiff's due process and equal protection claims even though there

was "no question that . . . defendants engaged in egregious misconduct" in reviewing plaintiff's land

use application. The Yale Auto Parts Court held:

> the mere violation of a state statute does not automatically give rise
> to a violation of federal Constitutional rights . . . .  Indeed, even an
> outright violation of state law in the denial of a license will not
> necessarily provide the basis for a federal claim . . . at least when the
> applicant has a state law remedy.

758 F.2d at 58-59.  Likewise, in RRI Realty, 870 F.2d at 919, a plaintiff who lacked a property

interest in a building permit could not maintain a due process claim "regardless of how unlawful

under state law the ultimate denial may have been."

As such, even if the Town acted improperly - - or violated state law - - in correcting the

Official Map in 2007 to show the Property in an R-20 District, S&R's due process claims must be

dismissed because it lacks a property interest.  Dismissal is particularly warranted because, as noted

in Yale Auto Parts, S&R "has a state law remedy" if it chooses to challenge the manner in which the

Town corrected the Official Map.  758 F.2d at 58-59; see Point I(B), supra.

For the foregoing reasons, S&R has no federally protectable property interest in the alleged

CA District zoning status of the Property.  As such, S&R cannot state its takings claim or its

substantive or procedural due process claims.  The Court should, therefore, dismiss each of those

claims with prejudice.

428372.3 DOCSNJ                                    28

**POINT III**

**S&R'S PROCEDURAL DUE PROCESS CLAIM MUST ALSO BE DISMISSED BECAUSE THE ZBA ISSUED A WRITTEN OPINION AFTER A FULL HEARING**

S&R's procedural due process claim must be dismissed because it is not ripe and because S&R lacks a property interest. (Points I and II, *supra*). It must also be dismissed because "procedural due process requirements are generally satisfied where the denial of plaintiff's request is preceded by notice and a hearing and followed by a written explanation." Vertical Broad, 84 F. Supp. 2d at 391; see Natale, 170 F.3d at 262 (procedural due process claim was not "viable since all denials were preceded by notice and hearing and followed by written explanations"); Palmer v. City of Saratoga Springs, 180 F. Supp. 2d 379, 386 (N.D.N.Y. 2001) (same).

Here, after the drafting error was corrected on the Official Map in February 2007, S&R appealed that action to the ZBA. During that proceeding, S&R was represented by counsel, submitted numerous affidavits and a memorandum of law. S&R appeared for hearings on three days in July 2007, August 2007 and September 2007. After considering all submissions and S&R's arguments at the hearings, the ZBA issued a written decision denying S&R's appeal. Clearly, these proceedings satisfied the requirements of procedural due process. See Palmer, 180 F. Supp. 2d at 386 (procedural due process satisfied where planning board held hearing and issued written decision). Accordingly, the Court should dismiss S&R's procedural due process claim with prejudice.

**POINT IV**

**S&R'S TAKINGS CLAIM SHOULD ALSO BE DISMISSED BECAUSE THE PROPERTY IS ECONOMICALLY VIABLE IN THE R-20 DISTRICT**

S&R's takings claim must be dismissed because it is not ripe and because S&R has no property interest. (Points I and II, *supra*). It must also be dismissed because the Property clearly

retains economic value in an R-20 District.

S&R appears to be alleging a "regulatory taking."[25] A "regulatory taking" occurs when "state regulation goes too far and in essence 'effects a taking.'" Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006). The landowner must establish that the regulation has effectively denied him of **_all_** economically viable use of its land. See Federal Home Loan Mortg. Corp. v. New York State Div. of Hous. & Comm. Renewal, 83 F.3d 45, 48 (2d Cir. 1996) (no taking where rent stabilization law did not deprive owner of all economically viable use of the property); Hertz Corp. v. City of New York, 1 F.3d 121, 132 (2d Cir. 1993) (plaintiff failed to state takings claim where it "unquestionably retains an 'economically viable' use of its property.").[26]

A taking does **_not_** occur if the challenged regulation simply causes a landowner to experience a reduced return on his investment. See Federal Home Loan Mortg. Corp., 83 F.3d at 48; Park Ave. Tower Assocs. v. City of New York, 746 F.2d 135, 138-40 (2d Cir. 1984) (taking does not occur simply because owner claims it was deprived a "reasonable return" by the regulation); Sterngass v. Town of Woodbury, 433 F. Supp. 2d 351, 356 (S.D.N.Y. 2006), aff'd, 2007 U.S. App. LEXIS 24366 (2d Cir. 2007) ("zoning changes that substantially diminish the value of land does not rise to the

---

[25]     "The law recognizes two species of takings: physical takings and regulatory takings." Buffalo Teachers Fed'n, 464 F.3d at 374. S&R does not specify what type of taking it is alleging. However, a physical taking occurs when the "the government physically takes possession of . . . property for a public purpose." Id. Clearly, no physical taking occurred in this case.

[26]     See also Webster v. Nat'l Fuel Gas Supply Corp., 2006 U.S. Dist. LEXIS 18357 at *24 (W.D.N.Y. 2006) ("Regulatory takings generally require some . . . government action that compels the owner to sacrifice **_all_** economically viable uses of his or her property.") (emphasis added); 2284 Corp. v. Shiffrin, 98 F. Supp. 2d 244, 251 (D. Conn. 2000) ("the law is clear that where the plaintiff retains an 'economically viable' use of its property an unconstitutional taking will not be found."); Kittay, 112 F.Supp.2d at 351 (if effect of regulation is to "reduce the ultimate profitability of the land or to make previously contemplated uses uneconomical, those consequences do not equate to an unconstitutional facial taking.").

level of a constitutional taking."); 2284 Corp., 98 F. Supp. 2d at 251 ("that the plaintiff may not profit as much as they would otherwise is of no consequence" to a takings claim).

S&R does not - - and cannot - - allege that the Property is valueless if located in an R-20 District. (Compl. ¶¶ 100-106). Clearly, S&R can develop the Property in accordance with the R-20 District's requirements, likely for profit. That S&R's profit might be less than if the Property were in a CA District, as matter of law, cannot state a regulatory takings claim. See Federal Home Loan Mortg. Corp., *supra*; Park Ave. Tower Assocs., *supra*. Accordingly, the Court should dismiss S&R's takings claim with prejudice.

**POINT V**

**S&R'S EQUAL PROTECTION CLAIM MUST ALSO BE
DISMISSED BECAUSE S&R FAILS TO ALLEGE THAT IT HAS BEEN
TREATED DIFFERENTLY THAN OTHER "SIMILARLY SITUATED" ENTITIES**

S&R's equal protection claim must be dismissed because it is not ripe. (Point I, *supra*). It must also be dismissed because S&R has not alleged - - and cannot allege - - that it was treated differently than "similarly situated" individuals. (Compl. ¶¶ 107-113).

S&R claims it was "treated differently from other property owners within the Town." (Compl. ¶ 109). S&R appears to be asserting a "class of one" equal protection claim. See Harlen, 273 F.3d at 499.[27] To state such a claim, a plaintiff must show: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights." See Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).

---

[27]     The other type of equal protection claim is a "prototypical" assertion of "discrimination against people based on their membership in a vulnerable class . . . ." Harlen, 273 F.3d at 499. S&R does not allege any particular class-based discrimination.

"In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be *extremely high.*" Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (emphasis added). Indeed, plaintiff must show that it was "treated differently than someone who is *prima facie identical in all relevant respects.*" Id. at 104 (emphasis added);[28] see also Yale Auto Parts, 758 F.2d at 61 (to state equal protection claim plaintiff must allege defendants "treated their application differently from other similar applications.").

S&R's bald allegation that it was treated differently than certain unidentified "other property owners" simply fails as a matter of law to state an equal protection claim.   Nowhere does S&R allege that any of these unidentified owners are similar, much less allege facts indicating any are "prima facie identical." This alone requires dismissal of S&R's equal protection claim. See Yale Auto Parts, 748 F.2d at 61; see also Gagliardi, 17 F.3d at 193 (dismissing equal protection claim where complaint "merely includes bald allegations that [defendants] preferred the interests" of other property owner over plaintiff); Economic Opp. Comm. of Nassau Cty., 47 F.Supp.2d at 370 (dismissing equal protection claim "there are no allegations regarding similarly situated entities at all."); A.B.C. Home Furnishings, Inc. v. Town of East Hampton, 947 F Supp. 635, 646-647 (E.D.N.Y. 1996) (same).

S&R's equal protection claim is further undermined because the 2007 correction of the Official Map similarly affected the property located at 450-460 Central Avenue. See Burke, 2001

---

[28]    The level of similarity between the S&R and the person(s) with whom it compares itself must be "so high"that: (1) "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Prestopnik v. Whelan, 249 Fed. Appx. 211 (2d Cir. 2007) (citing Neilson, 409 F.3d at 104-05).

U.S. Dist. LEXIS 22505 at ** 23-24 (plaintiff's "claimed equal protection violation is wholly undercut by [other property owners] who likewise allege the same exact treatment."). Clearly, therefore, neither S&R nor the Property was selectively treated by the Town. For these reasons, S&R's equal protection claim must be dismissed with prejudice.

**POINT VI**

### S&R'S ARTICLE 78 CLAIM MUST BE DISMISSED BECAUSE IT IS UNTIMELY

S&R's Article 78 claim must be dismissed because it is untimely. New York Town Law § 267-c(1) provides that:

> any person . . . aggrieved by any decision of [a zoning board of appeals] . . . may apply to the supreme court for review by a proceeding under [Article 78]. Such proceeding shall be instituted *within **thirty days** after the filing of a decision of the board in the office of the town clerk*. (Emphasis added).

Here, the ZBA filed its decision denying S&R's appeal with the Town Clerk on November 1, 2007. (Walker Decl., Exh. K). The Town also e-mailed the decision to S&R and its counsel on that day. (Id.). S&R did not file its complaint in this Court until December 7, 2007 - - 36 days later. (Dkt Entry #1). The ZBA did ***not*** - - as S&R impliedly alleges (Compl. ¶ 90) - - first file its decision with the Clerk on November 9, 2007 and the Court need not accept that allegation. See ESI, Inc. v. Coastal Power Prod. Co., 13 F. Supp. 2d 495, 497 (S.D.N.Y. 1998) (Conner, J.) ("if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

The November 9, 2007 decision merely made some clerical corrections and was substantively identical to the November 1, 2007 decision. The November 9 decision did not constitute a new appealable "decision" by the board under Town Law § 267-c(1) or extend S&R's 30-day time frame

to file an Article 78 proceeding to review the November 1 decision. See Palm Mgmt. Corp. v. Goldstein, 8 N.Y.3d 337, 865 N.E.2d 840, 833 N.Y.S.2d 423 (2007).

Palm Mgmt. Corp. involved an appeal by several property owners to the Town of East Hampton's zoning board of the code enforcement department's issuance of a certificate of occupancy ("CO") in 2003 approving dormitory and awning uses at an inn owned by Palm Management. Prior COs were issued for both uses in 1989 and 1993. 8 N.Y.3d at 339. The Court observed that New York Village Law § 7-712-a(5)(a) required the public filing of, *inter alia*, each "order" or "decision" of "an administrative official . . charged with the enforcement of the zoning local law" and that § 7-712-a(5)(b) provided that an appeal to the ZBA "shall be taken within sixty days" of the filing of the order or decision. Id. at 340-41. The Court of Appeals held that the property owners' appeal from the 2003 CO was untimely because the dormitory and awning uses had been approved in the 1989 and 1993 CO's:

> the mere repetition, in words or substance, of an authorization contained in the old certificate of occupancy should not be treated as a newly appealable "order, requirement, decision, interpretation or determination." The village official who issued the new certificate of occupancy in 2003 did not decide or determine anything about the dormitory or the awning, except that they had already been approved years before. (Id. at 341).

Palm Mgmt Corp. dictates that the ZBA's November 9, 2007 decision here did not constitute a "newly appealable" decision for purposes of Town Law § 267-c(1). Rather, it was identical in substance to the ZBA's November 1, 2007 decision. Accordingly, S&R was obligated to commence its Article 78 proceeding within 30 days of the November 1, 2007 decision. S&R failed to do so and, therefore, this Court should dismiss S&R's Article 78 claim with prejudice as untimely.

### POINT VII

### S&R'S CLAIMS AGAINST THE TOWN OF GREENBURGH FAIL
### TO ALLEGE AN UNCONSTITUTIONAL "CUSTOM OR POLICY"

S&R's constitutional claims against the Town must also be dismissed because S&R fails to allege that correction of the Official Map was part of an unconstitutional custom or policy.

To hold a municipality liable under § 1983, a plaintiff must allege and prove "an official policy or custom that causes the plaintiff to be subjected to a denial of a constitutional right." Goldfine, 80 F. Supp. 2d at 162 (Conner, J.). The conclusory assertion of a custom or policy "is insufficient in the absence of allegations of fact tending to support ... such an inference." Id. (citing Zahra, 48 F.3d at 685).

Here, S&R does not allege that the Town has an unconstitutional "custom or policy," much less allege facts that would infer that the Property's location on the Official Map was changed pursuant to one. This alone warrants dismissal of the claims against the Town. See, e.g., Van Emrik v. Chemung County Dept. of Social Servs., 911 F.2d 863, 868 (2d Cir. 1990) (claim against county dismissed where plaintiff failed to allege any custom or policy contributed to denial of plaintiff's constitutional rights); Singleton v. New York, 632 F.2d 185, 195 (2d Cir. 1980) (same); Bezerra v. County of Nassau, 846 F. Supp. 214, 220 (E.D.N.Y. 1994) (same).

S&R alleges nothing more than a single allegedly unconstitutional act (i.e., the correction of the Official Map). However, "allegations concerning a single incident of unconstitutional activity are insufficient to demonstrate the existence of a custom or policy." Giaccio v. City of New York, 2005 U.S. Dist. LEXIS 642 at * 21 (S.D.N.Y. 2005); Singleton, 632 F.2d at 195 (an "'official policy' cannot ordinarily be inferred from a single incident of illegality.").

For these reasons, S&R's claims against the Town must be dismissed with prejudice.

**POINT VIII**

**S&R'S DECLARATORY JUDGMENT AND ARTICLE 78
CLAIMS SHOULD ALSO BE DISMISSED FOR LACK OF JURISDICTION**

Assuming the Court dismisses S&R's due process, takings and equal protection claims, the Court should also dismiss S&R's Article 78 and declaratory judgment claims for lack of jurisdiction. See Concerned Citizens v. New York State Dep't of Envtl. Conservation, 1997 U.S. App. LEXIS 36155 at *16 (2d Cir. 1997) (dismissing declaratory judgment claim because Declaratory Judgment Act, 28 U.S.C. § 2201, "does not enlarge the jurisdiction of the federal courts" and "a declaratory judgment action must therefore have an independent basis for subject matter jurisdiction."); Abato v. New York City Off-Track Betting Corp., 2007 U.S. Dist. LEXIS 41846 at ** 29-30 (S.D.N.Y. 2007) (dismissing Article 78 claims for lack of jurisdiction); Sterngass, 433 F.Supp.2d at 358 (dismissing declaratory judgment claim); Blatch v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (dismissing Article 78 claim).

**POINT IX**

**THE COURT MUST DISMISS S&R'S FAIR HOUSING
ACT CLAIM BECAUSE IT FAILS TO ALLEGE ANY FACTS TO
SUPPORT A CLAIM OF "FAMILIAL STATUS" DISCRIMINATION**

S&R appears to be claiming that defendants engaged in FHA discrimination against both: (1) S&R; and (2) plaintiffs John Does Nos. 1-75 - - who are "future residents of the multiple dwellings proposed to be constructed on the Property." (Id. ¶ 8). S&R claims the Town's correction of the Official Map discriminated against the John Doe plaintiffs based upon their "familial status." (Compl. ¶¶ 125-134). S&R also claims that the Town has acted "solely to delay and disrupt S&R's

ability to effectuate its business plan to provide multi-family housing for" the John Doe plaintiffs.

(Id. ¶ 127).   S&R's FHA claim must be dismissed in its entirety.

## A.     **Statutory Language**

S&R appears to be alleging discrimination under 42 U.S.C. § 3604, although it is unclear

under which subpart.   S&R's claim appears to implicate the following sections:

it shall be unlawful--

(a)     To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because . . . familial status . . . . .

(b)     To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . .

(c)     To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any . . . discrimination based on . . . familial status . . . or an intention to make any such . . . discrimination.[29]

The FHA defines "familial status," in pertinent part, as "one or more individuals (who have not

attained the age of 18 years) being domiciled with . . . a parent or another person having legal

custody of such individual or individuals." 42 U.S.C. § 3602(k)(1).[30]

---

[29]     These sections also apply to discrimination based on race, color, religion, sex or national origin." 42 U.S.C. § 3604(a-c)

[30]     Congress prohibited "familial status" discrimination to address concerns "based on studies and hearings indicating that families with children were having difficulty securing housing because of age limitations." Massaro v. Mainlands Section 1 & 2 Civic Ass'n, 3 F.3d 1472, 1476 (11th Cir. 1993); Llanos v. Estate of Coehlo, 24 F. Supp. 2d 1052, 1056-1057 (E.D. Cal. 1998) (Congress "expanded the Fair Housing Act to protect against familial status discrimination in light of an express concern for the plight of single-parent families, young families with children, and poor

**B.**    <u>S&R Cannot State A Claim Under § 3604(a)</u>

In <u>Lynn v. Vill. of Pomona</u>, 373 F. Supp. 418, 428-29 (S.D.N.Y. 2005) (Conner, J.), <u>aff'd</u>, 212 Fed. Appx. 38 (2d Cir. 2007), this Court held that for a builder to establish a *prima facie* claim under § 3604(a) (there based on race), it must show that:

> (1) they contracted with persons who are members of a class protected by the FHA; (2) those persons sought and were qualified to purchase the housing in question; (3) defendants "otherwise made unavailable" or refused to sell the housing to those persons; and (4) the housing opportunity remained available to other purchasers. In other words, plaintiffs must demonstrate that other builders, who are situated similarly to plaintiffs, were treated differently by defendants on the basis of race. (citation and footnotes omitted).

Here, S&R has not - - and cannot - - allege that: (1) it has contracted with any family with children to buy a unit on the Property; or (2) housing opportunities at the Property have "remained available to other purchasers." Further, S&R has not alleged that other builders were treated differently because S&R allegedly sought to sell units to families with children.

S&R likewise has not alleged facts showing that the Town "made unavailable" housing to families with children. This requires S&R to, at minimum, demonstrate some adverse impact upon families with children. See <u>Lynn</u>, 373 F. Supp. 2d at 427. The Town's correction of the Official Map to confirm the Property's R-20 District simply does not discriminate against families with children. The R-20 District (or any other District in the Town for that matter) does not prohibit families from occupying any dwelling. Moreover, while the R-20 District will permit fewer units to be constructed on the Property, this reduces the availability of housing units to **_all_** persons - - not just to families with children. As a matter of law, S&R cannot establish an FHA "familial status" discrimination

families").

claim. See Easthampton Center, LLC v. Township of Easthampton, 155 F. Supp.2d 102, 121 (D.N.J. 2001) (dismissing FHA "familial status" discrimination claim where zoning ordinances that reduced buildable units from 2,161 to 443 reduced "housing choices available to all prospective residents . . . regardless of familial status.").

C.    **S&R Cannot State a Claim Under § 3604(b) or § 3604(c)**

To the extent S&R is asserting a claim pursuant to § 3604(b), it fails for the same reasons that its § 3604(a) claim fails. See Wills v. Becvar, 1998 U.S. Dist. LEXIS 13540 at *23 (N.D. Ill. 1998) (same *prima facie* test applies to §§ 3604(a) and (b) claims). Moreover, § 3604(b) prohibits discrimination in the "*provision of services or facilities*" in connection with the sale or rental of a dwelling. As this Court noted in Lynn, 373 F. Supp. 2d 418, this section applies to "owners of housing" who provide such "services or facilities." See Clifton Terrace Assoc., Ltd. v. United Tech. Corp., 929 F.2d 714, 719 (D.C. Cir. 1991) (same); see also Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (§ 3604(b) applies to "property owners and their agents"); Sierotowicz v. 189 Ross Assocs. Corp., 2006 U.S. Dist. LEXIS 22134 at *4 (E.D.N.Y. 2006) (same). It is not applicable to a claim - - like S&R's - - that a land use decision was discriminatory under the FHA. Lynn, *supra.*

Section 3604(c) is likewise inapplicable. That section prohibits discrimination in connection with "any notice, statement, or advertisement, with respect to the sale or rental of a dwelling." On its face, it does not apply to statements unrelated to the sale or rental of property. See Delawter-Gourlay v. Forest Lake Estates Civic Ass'n, 276 F. Supp. 2d 1222, 1234 (M.D. Fla. 2003).[31] Indeed, the Department of Housing and Urban Development's regulations interpreting §

_____

[31]    In United States v. Space Hunters, Inc., 429 F.3d 416, 424 (2d Cir. 2005), the Second Circuit held that application of § 3604(c) is not limited to property owners and their agents. Unlike § 3604(b), therefore, § 3604(c) would not be inapplicable to the defendants simply because they do

3604(c) state:

> The prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling. Written notices and statements include *any applications, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling.*

24 C.F.R. § 100.75(b) (emphasis added). Clearly, any statements made by Town officials concerning the Property, the proposed moratorium or S&R's appeal were not related to the sale or rental of units. Certainly, they bear no resemblance to documents set forth in HUD's regulations, such as flyers, banners or billboards. See Pfaff v. U.S. Dept. of Housing & Urban Dev., 88 F.3d 739, 747 (9th Cir. 1996) (HUD's "interpretation of the FHA ordinarily commands considerable deference").

Even if § 3604(b) or § 3604(c) were applicable, as stated above, S&R cannot establish that the Town's correction of the Official Map had a discriminatory impact on families with children.

For these reasons, the Court should dismiss S&R's FHA claim with prejudice.

## CONCLUSION

For the aforementioned reasons, the Court should grant defendants' motion to dismiss S&R's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**LANDMAN CORSI BALLAINE & FORD P.C.**
**Attorneys for Defendants**

Dated:  **February 29, 2008**
        **New York, New York**

By: / James M. Woolsey (JW-9157)

---

not own the Property. Section 3604(c) is, however, still plainly inapplicable because the Town did not make any statement prohibited by that section.

## AFFIDAVIT OF SERVICE VIA FEDERAL EXPRESS

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK   )


     **RYAN NEW**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at NEW YORK, NEW YORK.

     That on the 29th day of February, 2008, deponent served the within **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO FRCP § 12(b)(1) and (6) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** upon:

          John A. Risi, Esq. (JR 6475)
          BLEAKLEY PLATT & SCHMIDT
          One North Lexington Avenue
          P.O. Box 5056
          White Plains, New York 10602-5056

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed Federal Express overnight mail wrapper, under the exclusive care and custody of Federal Express.

                              Ryan New

Sworn to before me this
29th day of February, 2008

              Notary

CHRISTOPHER FRETEL
NOTARY PUBLIC, State of New York
No. 02FR6123499
Qualified in New York County
Commission Expires March 7, 2009