UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
S&R DEVELOPMENT ESTATES, LLC and "JOHN
DOE" NOS. 1 THROUGH 75,

                    Plaintiffs,

      *- against -*

STEVEN BASS, EDDIE MAE BARNES, PAUL FEINER,
DIANA JUETTNER and FRANCIS SHEEHAN,
Constituting the Town Board of the Town of Greenburgh,
Westchester County, New York, STEVEN BELASCO,
MALCOLM BAUMGARTNER, EVE BUNTING-SMITH,
NICHOLAS DECICCO, LAWRENCE DOYLE, ROHAN
HARRISON and DANIEL ROSENBLUM, Constituting
the Zoning Board of Appeals of the Town of Greenburgh,
Westchester County, New York, MARK STELLATO,
Commissioner of the Department of Community
Development and Conservation of the Town of Greenburgh,
TOWN OF GREENBURGH and JOHN and JANE DOE,

                    Defendants.

-------------------------------------------------------------------X

07 Civ. 11112 (WCC)(GAY)

**ECF CASE**

## PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS' RULE 12(b)(1) and (6)
### F.R.CIV.P. MOTION TO DISMISS THE COMPLAINT

BLEAKLEY PLATT & SCHMIDT, LLP
*ATTORNEYS FOR PLAINTIFFS*
ONE NORTH LEXINGTON AVENUE
P.O. BOX 5056
WHITE PLAINS, NY 10602-5056
(914) 949-2700

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    APPLICABLE RULE 12(b)(6) STANDARD OF REVIEW . . . . . . . . . . . . . . . 6

POINT I

    PLAINTIFF'S CLAIMS ARE RIPE FOR ADJUDICATION . . . . . . . . . . . . . . . . . . . 7

     A.    THE RIPENESS TEST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.    PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE RIPE . . . . . . . . . . . . . . . 9

     C.    ANY VARIANCE APPLICATION WOULD BE FUTILE . . . . . . . . . . . . . . . 11

     D.    THE CASES RELIED UPON BY THE TOWN ARE
         FACTUALLY DISTINGUISHABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     E.    PLAINTIFF NEED NOT EXHAUST STATE COURT REMEDIES . . . . . . . . 14

POINT II

    PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF THE
    FAIR HOUSING ACT ("FHA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     A.    THE AMENDED COMPLAINT PROPERLY ALLEGES
         CLAIMS FOR RELIEF UNDER THE FHA . . . . . . . . . . . . . . . . . . . . . . . . . 15

     B.    LEGAL THEORIES OF DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . 17

     C.    A CLAIM IS PLED UNDER § 3604(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     D.    A CLAIM IS PLED UNDER § 3604(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

## TABLE OF CONTENTS (Cont'd)

**Page**

E.  A CLAIM IS PLED UNDER § 3604(c) ............................... 21

F.  THE CASES CITED BY DEFENDANTS ARE
DISTINGUISHABLE .......................................... 22

POINT III

PLAINTIFF PROPERLY ALLEGES A CLAIM FOR A
VIOLATION OF THE EQUAL PROTECTION CLAUSE ..................... 25

A.  GENERIC EQUAL PROTECTION CLAIM ........................... 26

B.  "CLASS OF ONE" THEORY ..................................... 27

POINT IV

PLAINTIFF HAS A VALID PROCEDURAL DUE PROCESS
CLAIM ..................................................... 29

POINT V

S&R DID NOT HAVE A FULL AND FAIR HEARING ...................... 33

POINT VI

S&R'S ARTICLE 78 CLAIM IS TIMELY ................................ 35

POINT VII

S&R HAS ALLEGED A NUMBER OF ACTS RISING TO THE
LEVEL OF UNCONSTITUTIONAL CUSTOMS OR POLICIES ................ 37

POINT VIII

THIS COURT DOES NOT LACK JURISDICTION OVER S&R'S
DECLARATORY JUDGMENT AND ARTICLE 78 CLAIMS .................. 39

CONCLUSION ......................................................... 40

## PRELIMINARY STATEMENT

Confronted with a litany of glaring violations of the United States Constitution, The Fair Housing Act, New York's Open Meetings Law, the New York Town Law and the Town of Greenburgh Town Code – all inspired by a petty internecine political battle between local politicians eager to placate the outrageous demands of local environmental and school district advocates – defendants have embraced an all too predictable defense strategy. They seek dismissal of the entire Amended Complaint under Rule 12(b)(1) and (6).

Defendants assail the Amended Complaint with a veritable kitchen sink of arguments. In so doing, defendants either ignore, mischaracterize or simply manufacture the applicable claims, facts and law in the apparent hope this Court will do the same.

This case involves the plaintiff's two-year odyssey to develop a single four-story, 37-unit, multi-family project on 2.34 acres which was unequivocally located within a Central Avenue Mixed Use Impact District ("CA" zone), a multi-family zone, by all available official Town zoning maps, including Official Town Maps adopted in 1997, 2000, 2003 and 2006. Indeed, the plaintiff's property is immediately adjacent to a much larger 188-unit town home development (Scarsdale Woods). After a thorough due diligence process involving (i) highly regarded architects, engineers and land use attorneys, well-versed and experienced with development in the Town of Greenburgh, and (ii) Town Planners and Building Inspectors, as of December 2006 the Town agreed that the plaintiff's property was zoned for multi-family development under the Town's Official 2006 Zoning Map. In reliance thereon, plaintiff embarked upon its proposed development.

However, once representatives of the adjacent Greenburgh Nature Center ("GNC") and Edgemont School District (arguably the most elite and exclusive public school system in New

York) became aware of plaintiff's plan, opposition to plaintiff's modest project erupted.  In response, the Town defendants embarked upon a series of patently unlawful acts to defeat the project, including without limitation, the following:

- conducting illicit secret Town Board meetings regarding the project, purposefully excluding Supervisor Feiner, with whom they were engaged in a political fist fight (Docket Entry 2, Amended Complaint,¶ 70);

- threatening plaintiff's principals not to advise either Supervisor Feiner or a local public advocate (Hal Samis) of these meetings in order to prevent public disclosure of their illegal conduct (Amd. Comp., ¶ 64);

- coercing plaintiff that, if it refused to dramatically downsize its proposed project and donate a substantial portion of its property to the GNC, the Town Board would hastily enact a building moratorium which would strangle and fiscally undermine the plaintiff's proposed project (*Id.* at ¶ 61);

- proposing that plaintiff secretly deed a portion of the property, originally designated for the GNC, to an individual who represented local Edgemont residents who desired to formally secede from the Town of Greenburgh and create an exclusive independent Village of Edgemont, the plaintiff's property to be the location of the future Edgemont Village Hall (*Id.* at ¶ 68, 70-71);

- when plaintiff's principals resisted the defendants' extortion, in blatant derogation of New York Law and their own Town Ordinance, the municipal defendants simply "adjusted," with the stroke of a pen, the Official 2006 Zoning Map, which under the Town Code was the "final authority" of the zoning status of all Town

2

property, unilaterally (and unlawfully) changing the zoning status of plaintiff's property from a multi-family zone to a single-family zone (*Id.*at ¶ 77);

- in making the zoning change, no public notices were published, no public hearings held, evidence admitted, formal finding made or explanations offered by either the Town Board or Planning Board; all in abject violation of mandated requirements of New York Town Law § 264 and § 285-64 of the Town's own Code. Instead, to punish plaintiff, Town officials simply advised plaintiff's attorney via letter that the zoning status of plaintiff's property had been changed to a single-family zone, thereby defeating plaintiff's project and gutting the value of the property (*Id.* at ¶ 76-78); and

- their withholding from plaintiff for five months alleged zoning maps from 1984, 1987 and 1991 (2) despite plaintiff's concededly valid request for same under New York's Freedom of Information Law, and their eleventh-hour submission of these "magical maps" for the first time in opposition to plaintiff's Zoning Board appeal (Amd. Comp.,¶ 88, 90; Risi Dec., Exh. 2, ¶ 6).[1]

Reminiscent of the inept illegal scheme depicted in the popular play "The Producers," the aforesaid scenario would be equally hilarious but for its brazen illegality and devastating impact on both plaintiff and the families and children who have been deprived of the opportunity to live in plaintiff's proposed development and enjoy the benefits of an Edgemont School education.

As discussed below, in the Amended Complaint and plaintiff's accompanying submissions, defendants' illegal conduct has trammeled the plaintiff's constitutional rights to

---

[1]     Defendants have submitted for the first time with this motion another map of dubious origin, purportedly the official zoning map from June 25, 1980 (Madden Dec. Exh. H). Defendants offer no evidence regarding its provenance or explanation why it was not produced in response to plaintiff's FOIL request.

3

equal protection and due process, violated well-settled provisions of The Fair Housing Act, and constitutes illegal and arbitrary and capricious conduct under Article 78 of New York's CPLR.

## RELEVANT FACTS

Given the liberal standards of review governing Rule 12(b)(6) motions, we respectfully refer the Court to the Amended Complaint, as well as the Affidavit of Richard Troy ("Troy Affidavit") for a full and complete recitation of the facts.[2]  This memorandum will focus on the multiple arguments raised in defendants' memorandum of law.

## SUMMARY OF ARGUMENT

The case begins and ends with the two dispositive provisions of the Greenburgh Town Code which, remarkably, defendants totally ignore in their brief.  We submit this glaring omission speaks volumes.

Section 285-7(A) of the Town Code unequivocally provides that the Town's "Official" Zoning Map is the "**final authority**" regarding the zoning status of any Town parcel, providing in pertinent part:

* * *

> **An official copy of said map, indicating the latest amendments, shall be kept up to date in the office of the Building Inspector and in the office of the Commissioner of Community Development and Conservation for the use and benefit of the public.  Said Official Zoning Map shall be the final authority as to the current zoning classification of any land within the boundaries of the unincorporated Town of Greenburgh.**

(Madden Dec., Exh. A, Town Code, § 285-7(A) (emphasis added)).

---

[2]     In their motion, defendants included the Troy Affidavit without the majority of its exhibits, many of which are very significant to plaintiff's claim.  Therefore, plaintiff has submitted the Affidavit with exhibits via the Declaration of John A. Risi, as is permitted.  *See ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

The "Official" 2006 Zoning Map maintained by the Town's Building Inspector, like the 1997 (2), 2000 and 2003 Official Maps before it, reflected that plaintiff's property was in the CA multi-family zone. We submit that § 285-7(A) means what it says – that the 2006 Official Map was "the **final** authority as to the current zoning classification" of plaintiff's property. (Emphasis added).

Section 285-64 of the Town Code provides the only legal procedure to amend the Town Code and Official Zoning Map which, predictably, requires a phalanx of public notices, public hearings before the Planning Board and Town Board, formal written findings, and the adoption of a formal Town Board resolution to satisfy baseline constitutional due process standards. *See* Madden Dec., Exh. F (full text of the Ordinance).

To defeat plaintiff's project and curry favor with environmental and school activists, defendants simply ignored these provisions. Instead, relying upon what appear, at best, to be fabricated and/or dated non-official maps, the origin and location of which have **never** been identified (and which were inexplicably withheld from plaintiff), Commissioner of Community Development and Conservation Stellato issued a memo directing Town Engineer, Michael Lepre, to simply alter the 2006 "Official" Zoning Map with a pen to change the zoning designation of plaintiff's property from the CA multi-family zone to R-20 single-family zone (Walker Dec., Exh. J).

This simple, manifestly illegal administrative act, which contradicted the Town's own Code, let alone applicable New York State Town Law, the United States Constitution and The Fair Housing Act, stopped plaintiff's proposed multi-family development in its tracks.

**LEGAL ARGUMENT**

A.    <u>**Applicable Rule 12(b)(6) Standard of Review**</u>

To satisfy the pleading standards set forth in the Federal Rules of Civil Procedure, a plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2). The Supreme Court has repeatedly stated that, consistent with this liberal standard, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *See Erickson v. Pardus,* __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* __ U.S. __, 127 S.Ct. 1955, 1964 (2007)(internal citation omitted)); *see also Iqbal v. Hasty,* 490 F.3d 143, 155-157 (2d Cir. 2007)(discussing the holding of *Bell Atlantic Corp.,* and concluding that the Supreme Court, through *Bell Atlantic,* called for "a flexible 'plausibility standard,'" rather than a "universal standard of heightened fact pleading"), *petition for certiorari pending* (2008).

Moreover, in deciding a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken as true and all reasonable inferences must be drawn in favor of the plaintiff. *See Erickson v. Pardus,* 127 S.Ct. at 2200 (citing *Bell Atlantic Corp.,* 127 S.Ct. at 1964); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)(observing that a district court analyzing a motion to dismiss inquires "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Thus, the Supreme Court recently reiterated in *Bell Atlantic,* "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." 127 S.Ct. 1969 n. 8.

We submit that, here, plaintiff's Amended Complaint easily satisfies the pleading standards set forth in F.R.Civ.P. 8(a)(2), and defendants' motion to dismiss must be denied.

## POINT I

## PLAINTIFF'S CLAIMS ARE RIPE FOR ADJUDICATION

There is no merit to defendants' ripeness argument (Def. Brief, pp. 14-20).

**A.**     **The Ripeness Test**

The long-established test for ripeness is (a) whether the issues are fit for judicial review and (b) the hardship to the parties of withholding judicial consideration. *Abbott Laboratories. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grds, Califano v. Sanders*, 430 U.S. 99, 105 (1977). Courts have reformulated the ripeness doctrine in land use cases to require some level of compliance with State-mandated zoning procedures. For instance, the courts often require that the property owner obtain a final decision on its land use application from the municipality. *See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)[3]; *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2004). Plaintiff did precisely that by unsuccessfully appealing to the Zoning Board the Town's illegal altering of the 2006 Official Zoning Map.

Defendants misrepresent that a variance is a prerequisite for standing in a constitutional land use action (Def. Brief, pp. 15-16). No such *per se* rule exists. Indeed, courts have frequently sustained constitutional land use claims under circumstances analogous to the case at bar. *See County Concrete Corp. v. Township of Roxbury*, 442 F.3d 159 (3d Cir. 2006)(property

---

[3] The two-prong ripeness test enunciated in *Williamson* (see Def. Brief, p. 14) does not apply here, where plaintiff sustained an immediate constitutional injury when its property was illegally rezoned without the benefit of mandatory public notice(s) and public hearing(s)(*see* Point IV, *infra*). *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-90 (2d Cir. 2002)(applying prong-one but not prong-two ripeness test to due process and equal protection claims but declining to apply either prong-one or prong-two ripeness test to First Amendment claim in part because plaintiff suffered "immediate injury").

owner need not comply with the final decision requirement when the owner complains that the

Town improperly and deliberately interfered to block or delay the permit); *Lauderbaugh v.*

*Hopewell Township*, 319 F.3d 568 (3d Cir. 2003)(property owner's appeal of building permit

revocation satisfies the final decision requirement); *Reahard v. Lee County*, 30 F.3d 1412 (11th

Cir. 1994)(appeal of an adverse administrative interpretation of the zoning code was, in effect,

an application for a variance which satisfies the final decision requirement); *Bannum, Inc. v.*

*City of Louisville*, 958 F.2d 1354 (6th Cir. 1993)(the final decision requirement does not

mandate exhaustion of municipal administrative board or agency procedures); *Sharpvisions, Inc.*

*v. Borough of Plum*, 475 F.Supp.2d 514 (E.D.Pa. 2007)(Fair Housing Act plaintiff need not

obtain final zoning decision from municipal boards).

 In addition, where, as here, a plaintiff has asserted a Fair Housing Act claim, courts are

particularly reluctant to withhold judicial review in the face of discriminatory municipal actions.

*Sharpvisions, Inc. v. Borough of Plum, supra*; *Assisted Living Associates of Moorestown, LLC v.*

*Moorestown Township*, 996 F.Supp. 409 (D.N.J. 1998); *Sunrise Development, Inc. v. Town of*

*Huntington*, 62 F.Supp.2d 762 (E.D.N.Y. 1999).  This reluctance is based upon the generally

well-developed factual record, the actual concrete harm experienced by the Fair Housing

plaintiff, the harm which may befall the Fair Housing plaintiff by delaying judicial resolution,

and the relative lack of any harm to a municipality in defending its discriminatory conduct.[4]

*Assisted Living Assoc., supra* at 428; *Sunrise, supra* at 771; *Sharpvisions, supra* at 522.

---

[4] In the deciding Rule 12(b)(6) motion, this Court has also not hesitated to exercise supplemental jurisdiction over state law claims involving related federal claims.  *See Mahmud v. Kaufman*, 454 F.Supp.2d 150 (S.D.N.Y. 2006)(court exercised supplemental jurisdiction over state law claims in sustaining civil rights claim under 42 U.S.C. § 1981).

**B.**    **Plaintiff's Constitutional Claims are Ripe**

Plaintiff's constitutional claims are ripe under the aforesaid precedent. Plaintiff applied

for site plan approval[5] to construct a one building, 37-unit, multi-family development geared

toward families with young children wishing to educate their children in the elite Edgemont

School District. Opposition by School District advocates erupted, based upon the exclusionary

and unsupported premise that plaintiff's proposed development would flood the School District

with new children. Amd. Comp., ¶ 63. The environmental community joined the opposition

chorus, demanding that the property (or a substantial portion thereof), be dedicated to the

adjacent GNC (Amd. Comp., ¶¶ 49, 51, 57, 61). The Town's elected political officials,

confronted with a contentious upcoming election, predictably capitulated to and embraced this

opposition, going so far as to announce a proposed, albeit illegal, building moratorium (Amd.

Comp., ¶¶ 50, 52-55) which was specifically designed to target and defeat plaintiff's project (*see*

Risi Dec., Exh 2, sub-Exh. 27 at p. 3). The Westchester County Planning Board promptly

questioned the dubious validity of the proposed moratorium. Amd. Comp., ¶ 67.

In the end, the Town simply killed plaintiff's site plan application by illegally rezoning

plaintiff's property to a single-family zone.

Pursuant to Town Law § 267-b(1), plaintiff timely and properly appealed the illegal zone

change to the Town's Zoning Board of Appeals, seeking an interpretation that the property was

in the CA multi-family district pursuant to the Town's current and only 2006 "Official" Zoning

Map. This was the only viable and appropriate legal remedy available to plaintiff. Defendants

cannot seriously argue to the contrary. Only after plaintiff's appeal was denied, in a slanted

---

[5]    Defendants' statement that "S&R does not—and cannot—allege that the Town has not decided any
application by S&R for use of the property (Def. Brief, p. 16) is demonstrably false. *See* Amended Complaint (¶s
84-89).

proceeding that prompted an unprecedented vigorous 20-page dissent (*see* Risi Dec., Exh. 3), was this action commenced.

There is no doubt that the Town has arrived at a "final decision" regarding the application of the Zoning Code to the property. The Town directed its Planning personnel to illegally amend the 2006 Official Zoning Map in abject violation of Town Code § 285-64 and New York Town Law § 264. Having embraced such illegal and definitive measures, we submit it is absurd to suggest that the Zoning Board "might change its mind" and actually reverse both the import of its prior decision and the illegal mandate of the Town Board (the very people who appointed them), granting a use variance changing plaintiff's property back to a multi-family zone. The Town's position with respect to plaintiff's property is as clear and final as it is illegal – the Town maintains that the property is in a single-family zone.

Ironically, defendants now argue that, even if plaintiff applied for a variance, it still would not satisfy the final decision requirement (Def. Brief, p. 16, fn 16). This statement suggests only two possibilities: plaintiff should have sought either (1) a use variance from the Zoning Board or (2) a zone change from the Town Board which, if denied, would render the decision "final." However, these scenarios fly in the face of well-settled New York law. First, as this Court has observed, a municipality is under no legal obligation to consider or vote upon a request to amend its zoning regulations. It may simply ignore the application. *Society of New York Hosptial v. DelVecchio,* 70 N.Y.2d 634, 518 N.Y.S.2d 781 (1987). Stated another way, a zone change applicant is faced with the real prospect of being placed in an administrative limbo with no legal remedy.

Second, plaintiff's chances of securing a "use" variance – that is, to change the zoning of the property from single-family back to multi-family, is preposterous. Given the open hostility

of elected officials (who appoint the Zoning Board Members), the Edgemont school community, and the GNC environmental community, and the Zoning Board's self-serving decision upholding an absurd interpretation, such an application is implausible.  Moreover, the statutory standard for a use variance under Town Law § 267-b(2) is "stringent indeed," extraordinarily difficult to meet, and, as a consequence, such variances are "sparingly granted."  *Id.*[6]

C.     **Any Variance Application Would Be Futile**

Litigants are not required to engage in futile gestures to establish that their claim is ripe. *Southview Associates, Ltd. v. Bongartz,* 980 F.2d 84 (2d Cir. 1992); *Sunrise Development, Inc. v. Town of Huntington,* 62 F.Supp.2d 762 (E.D.N.Y. 1999); *Assisted Living Associates of Moorestown, LLC v. Moorestown Township,* 996 F.Supp. 409 (D.N.J. 1998).  Courts look to several factors in land use cases to determine whether further administrative processes are necessary or whether such processes would be an exercise in futility: (1) how well developed is the factual record, (2) what steps were taken by the Town to frustrate plaintiff's application, and (3) what hardship would befall the parties by requiring further administrative review.  *Sunrise Development, supra* at 770-71; *Assisted Living Associates, supra* at 428.

It would be a futile exercise to require plaintiff to seek a use variance to develop multi-family housing in what defendants have illegally declared is a single-family zone.  First, the factual record could not be more well-developed.  Second, the Town's elected officials, the Zoning Board they appointed, the adjoining GNC and the local anti-housing Edgemont school group have and would continue to undermine plaintiff's application for multi-family development.  Third, forcing plaintiff to return to the Zoning Board, which already denied its appeal and request for an interpretation, will not further define the Town's position with respect to plaintiff's property.  Indeed, the Town defendants' position could not be any clearer.  They

---

[6]      *See* Town Law § 267-b(2)(b).

oppose any form of multi-family development; they oppose the modest number of additional children in the Edgemont School District that such a development *might* generate;[7] and they want plaintiff to essentially "sell" (a/k/a donate) the property to the GNC in the interests of "open space" and "nature."

Since the Zoning Board has already applied different evidentiary standards to the Town and plaintiff (essentially requiring plaintiff to prove a negative), declined to enforce plaintiff's Zoning Board subpoena for Commissioner Stellato, and attempted to place on plaintiff much of the blame for what the Zoning Board charitably – or euphemistically – characterized as the Town's "allegedly poor record-keeping practices," (Walker Dec., Exh. L at p. 3) it would be the consummate exercise in futility to require plaintiff to pursue a use variance. [8]

### D.    The Cases Relied Upon by the Town are Factually Distinguishable

The cases cited by the defendants in support of their ripeness argument are clearly distinguishable. Unlike the instant action, most cases involve a complete failure to seek relief through municipal zoning processes. *Murphy v. New Milford Zoning Commission,* 402 F.3d 342 (2d Cir. 2005)(plaintiff received a cease and desist order, and did not apply for a variance or interpretation where the factual issues could be determined and litigation avoided); *Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.,* 261 F.Supp.2d 293 (S.D.N.Y. 2003)(plaintiff refused to file proof of loss, a prerequisite to review of its damage claim); *Dougherty v. Town of North Hempstead Board of Zoning Appeals,* 282 F.3d 83 (2d Cir. 2002)(plaintiff enlarged a non-conforming use without applying for or receiving a variance, the

---

[7]        It must be emphasized that plaintiff's project involves only 37 two-bedroom apartments. Therefore, at most such a project would likely add a maximum of 37 additional children to the school system.

[8]        We submit that the Town's eleventh-hour, as of yet unexplained, production of the pre-1997 "magical maps" during the Zoning Board proceeding, and equally unexplained failure to produce them five months earlier in response to plaintiff's FOIL request, is not a simple "error" – it is compelling evidence of bad faith, discriminatory conduct.

only way to enlarge a non-conforming use); *Southview Associates v. Bongartz,* 980 F.2d 84 (2d

Cir. 1992)(defendant rejected plaintiff's development application for ecological reasons, and

recommended changes to the plan, but plaintiff immediately commenced a civil rights action);

*Goldfine v. Kelly,* 80 F.Supp.2d 153 (S.D.N.Y. 2000)(plaintiff applied for subdivision approval,

but did not receive a decision and sued while review was ongoing); *Marathon Outdoor, LLC v.*

*Vesconti,* 107 F.Supp.2d 355 (S.D.N.Y. 2000)(plaintiff constructed a sign in violation of

dimensional requirement for signs and, after its permit was revoked, did not appeal the permit

revocation, but commenced civil rights action); *Rivervale Realty Co. v. Town of Orangetown,*

816 F.Supp. 937 (S.D.N.Y. 1993)(after its property was rezoned, plaintiff commenced an action

but did not apply to develop its land); *Kittay v. Guiliani,* 112 F.Supp.2d 342 (S.D.N.Y.

2000)(owner whose property was devalued by New York City watershed regulations did not use

administrative procedures for waivers or variances, but commenced action); *Xikis v. City of New*

*York,* 1990 U.S. Dist. LEXIS 13715 (E.D.N.Y.)(plaintiff was denied a zoning change and sued

to recover reduced value of property without applying for variance); *Cedarwood Land Planning*

*v. Town of Schodack,* 954 F.Supp. 513 (N.D.N.Y. 1997)(after plaintiff applied for subdivision

approval, zoning code was amended to eliminate a density bonus, plaintiff sued to challenge the

zoning amendment but did not seek a waiver from the zoning amendment or a variance from

zoning amendment).

 Unlike each of those cases, here plaintiff affirmatively appealed Commissioner Stellato's

decision to the Zoning Board.  After three hearings over four months, the Zoning Board

rendered a final decision denying the plaintiff's application.  Defendants cite no case with

analogous facts.  We submit that this denial is a final decision ripe for review.

**E.**    **Plaintiff Need Not Exhaust State Court Remedies**

Finally, while defendants correctly note that, before prosecuting a takings claim in Federal Court, a property owner must exhaust its state law remedies, no such requirement exists for equal protection, due process or Fair Housing Act claims.  In fact, none of the cases cited by defendants support the proposition that a plaintiff must file due process, equal protection or Fair Housing Act claims initially in State Court before suing in Federal Court.  Simply stated, no such authority exists.

For all the foregoing reasons, plaintiff's due process, equal protection and Fair Housing claims are ripe for judicial resolution.[9]

## POINT II

## PLAINTIFF HAS PROPERLY PLED VIOLATIONS OF THE FAIR HOUSING ACT ("FHA")

The FHA generally prohibits discrimination in the sale or rental of a dwelling on the basis of race, color, religion, sex, familial status, handicap or national origin.  More specifically, and insofar as is relevant to this action, the Town defendants' violations of the FHA include:

> To refuse to sell or rent ... or to otherwise make unavailable or deny a dwelling to a person due to their ... familial status ... 42 U.S.C. § 3604(a);

> To discriminate in the terms, conditions or privileges of the sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of ...familial status ... 42 U.S.C. § 3604(b);

> To print or publish a notice, statement or advertisement which indicates any preference, limitation or discrimination based on ... familial status ... 42 U.S.C. § 3604(c).

---

[9]    For the sake of judicial economy, plaintiff withdraws without prejudice its Fifth and Fourteenth Amendment takings claim pled as the First claim in the Amended Complaint.  Plaintiff does so without prejudice to renewal based upon the future conduct of defendants.

Familial status is defined as "one or more persons less than 18 years domiciled with a parent or legal guardian, or the designee of parent or legal guardian." 42 U.S.C. § 3602(k).

Plaintiff's sixth claim for relief alleges that the defendants, knowing of plaintiff's proposal to construct condominiums for families with young children so those families would qualify for education in the acclaimed Edgemont School District, intentionally embarked upon a campaign to prevent construction of such family housing.

A.    **The Amended Complaint Properly Alleges Claims for Relief Under the FHA**

Perusal of the Amended Complaint herein leaves no question that plaintiff has properly pled claims for relief under the FHA. The Amended Complaint alleges the following critical facts[10]: when plaintiff purchased the property the 2003 Official Town Zoning Map indicated the property was in the CA-I district (¶ 18); zoning regulations applicable to the CA-I district allowed multi-family buildings, which would permit the construction of 82 bedrooms (¶ 18); the Town's Zoning Code provides the Official Map controls as to the zoning designation of all property in the Town (¶ 18); plaintiff met with the Town building officials, who were receptive to the proposed multi-family building (¶s 23-6); plaintiff acquired the property after the successful meeting with Town building officials and demolished the home on the property (¶ 30, 37); after demolition, the adjoining GNC advised plaintiff it would oppose any development of the property (¶ 38); the Town announced it would oppose development and attempt to purchase the property (¶ 39); at a subsequent meeting with Town building officials, plaintiff was warned about Town elected officials' objections to the proposed multi-family building (¶ 46); Town elected officials immediately proposed a moratorium targeting only plaintiff's property (¶ 50; Risi Dec., Exh 1, ¶ 34); the Town then threatened to acquire the property through eminent

_____

[10]    For the purposes of this motion, all the alleged facts must be deemed to be true and plaintiff must be accorded the benefit of every favorable inference. *See Erickson v. Pardus*, 127 S.Ct. at 2200 (citing *Bell Atlantic Corp.*, 127 S.Ct. at 1964).

domain (¶ 54); at a public hearing on the moratorium, School District advocates complained that construction of the multi-family project would increase enrollment in the Edgemont School District (¶ 63); the Westchester County Planning Board raised serious questions about the intent and legality of the moratorium since it applied only to multi-family development in the CA district in Edgemont (¶ 67); the Town's Commissioner of Planning & Conservation then "determined" that the Property should be in the R-20 (single-family) district instead of the CA (multi-family) district (¶ 76); the Commissioner directed that the Town's official map be hand-altered to reflect the R-20 zoning designation of the property (¶ 77); thereafter, the Town saw no need for the moratorium and took no further steps to review it or act upon it (¶ 80); the Town then offered to purchase the property at a small fraction of its value (¶ 83); plaintiff appealed the Commissioner's determination to the Town's Zoning Board of Appeals (¶ 85); notwithstanding that the Town had no official maps in its records (in violation of State Law) for the years from 1958-2000, the Zoning Board upheld the Commissioner's determination that the property was properly situated in the R-20 district (¶s 88-9); that the defendants' actions were taken to frustrate, delay or defeat plaintiff's proposal to construct condominiums for families with young children so those families would qualify for education in the Edgemont School District (¶ 127); that, in their actions, defendants discriminated against plaintiff based upon familial status (1) in the provision of services or facilities in connection with the sale or rental of a dwelling (¶ 128), (2) by denying or otherwise making unavailable dwellings to be constructed on the property (¶ 129), and (3) by making statements which discriminated against plaintiff (¶s 131-2).

In light of the foregoing, the Amended Complaint clearly and unambiguously alleges that, through the illegal manipulation of the land use process and illegal alteration of the Town's Official Zoning Map, the Town denied or made unavailable to (a) plaintiff S&R the right to

construct housing for families with young children and (b) plaintiffs "John Doe" Nos. 1-75 the right to purchase and reside in such housing; discriminated collectively against all plaintiffs by denying them the benefits, services and facilities to build, or the right to reside in, housing which qualified for enrollment in the Edgemont School District; and (3) discriminated against all plaintiffs by redlining them out of the Edgemont School District.

Defendants request that this Court apply a heightened pleading standard to this action. However, the Supreme Court has held that it is manifestly improper to apply a heightened pleading standard to civil rights cases commenced under §1983 (*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 [1993]) or under Title VII of the Civil Rights Act (*Swierkiewicz v. Sorema*, 534 U.S. 506 [2002]). Both cases hold that a plaintiff need only satisfy the less rigorous standards of F.R.Civ.P 8, which provides for a "short and plain statement of the claim showing that the [plaintiffs] are entitled to relief" and which "gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Given the applicable pleading standard, the Amended Complaint adequately provides the defendants a short, plain statement of its claim and gives defendants fair notice of the content of and grounds for plaintiff's claims. Therefore, the motion must be denied as to the FHA claims.

**B.    Legal Theories of Discrimination**

Several legal theories are available to FHA plaintiffs alleging discrimination under the FHA: (1) that the defendants intentionally discriminated against plaintiffs; and (2) that defendants' actions have a disparate impact on plaintiffs.

Under the intentional discrimination theory (sometimes referred to as actions taken with discriminatory intent or disparate intent),[11] the Supreme Court has developed a test of five areas

---

[11]    Courts are cognizant of the fact that clever men may easily conceal their motivations. *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1037 (2d Cir. 1979).

of inquiry to determine whether actions were taken with discriminatory intent: (1) the discriminatory impact of the action; (2) the historical background of the action; (3) the sequence of events leading up to the action; (4) departures from normal procedural sequences; and (5) departures from normal substantive criteria. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). These areas are not exhaustive, and in intentional discrimination cases, discrimination needs to be merely a motivating factor, not the sole cause for the challenged action. *Id.*

Courts have, on numerous occasions, found zoning actions taken by a municipality to have been motivated by discriminatory intent. *Sunrise Development, supra*; *Assisted Living Associates, supra*; *Huntington Branch, NAACP, supra*; *Innovative Health Systems, supra*. Moreover, comments by members of the public are evidence of discriminatory intent even though those sentiments were not echoed by the decision-makers. *Innovative Health Systems, supra* (negative stereotypes about disabled individuals); *Sunrise Development, supra* (negative stereotypes against the elderly disabled); *R.E.C.A.P. v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002), cert. den. 537 U.S. 813 (2002)(comments at public meetings that a community has "done its fair share," there is "over-concentration" in community, or "do it somewhere else").

Under the disparate impact theory, the plaintiffs must demonstrate that defendants' policies actually or predictably result in discrimination against a protected class. *Huntington Branch, supra*. In disparate impact claims, the courts focus on this disproportionate burden imposed on a protected class. *U.S. v. City of Black Jack*, 508 F.2d 1179 (8th Cir. 1974)(denial of approval for multi-family subsidized building disproportionately impacts minorities); *Huntington Branch, NAACP, supra* (denial of zoning amendment to allow construction of low income housing by entity other than local government disproportionately impacted racial

minorities in violation of FHA); *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412 (2d Cir.

1995)(adoption of zoning prohibition against places of worship within a single-family home had

disproportionately high impact on orthodox Judaism in violation of FHA).

Plaintiffs respectfully submit that plaintiffs have pled claims viable for relief under both

legal theories, warranting denial of defendants' motion.

**C.   A Claim is Pled Under § 3604(a)**

Stated succinctly, plaintiffs claim that by manipulating the land use process, violating its

own zoning code and refusing to allow the property to be developed as housing for families with

young children, defendants "denied" or "otherwise made unavailable" housing based upon the

familial status of plaintiffs.  This theory is entirely consistent with this Court's holding in *Lynn*

*v. Village of Pomona,* 373 F.Supp.2d 418 (S.D.N.Y. 2005):

> The phrase "otherwise make unavailable," as it is used within the FHA,
> has been interpreted to reach a wide variety of discriminatory housing
> practices, including exclusionary or discriminatory zoning decisions. *See*
> *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 424-25 (2d Cir. 1995). In
> fact, "'the prohibition against making a residence unavailable has been
> applied to situations where government agencies take actions that prevent
> construction of housing when the circumstances indicate a discriminatory
> intent or impact against anticipated future residents who are members of a
> class protected.'"

373 F.Supp.2d at 426, 427.  *See also, R.E.C.A.P. v. City of Middletown,* 294 F.3d 35 (2d Cir.

2002)(denial of approval to construct housing for recovering alcoholics and substance abusers);

*Comer v. Cisneros,* 37 F.3d 775 (2d Cir. 1994)(§3604(a) reaches a broad range of activities that

have the effect of denying housing opportunities to a protected class, including local

governments); *Huntington Chapter, NAACP v. Town of Huntington,* 844 F.2d 926 (2d Cir.

1988), aff'd. 488 U.S. 15 (1988)(denial of zoning amendment to construct minority, low income

housing); *Sunrise Development, Inc. v. Town of Huntington,* 62 F.Supp2d 762 (S.D.N.Y.

1999)(adoption of zoning amendment to defeat construction of congregate care facility);

*Assisted Living Associates of Moorestown, LLC v. Moorestown Township,* 996 F.Supp. 409

(D.N.J. 1998)(same).

Plaintiffs therefore submit that a claim for relief is properly pled under § 3604(a).

**D.    A Claim is Pled Under § 3604(b)**

Plaintiffs claim that by manipulating the process, violating its own zoning code and

refusing to allow the property to be developed as housing for families with young children,

defendants discriminated against plaintiffs by denying them the terms, conditions or privileges

of the sale and purchase of a dwelling, most specifically municipal services, zoning and

education in the Edgemont School District.

In *Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37 (2d Cir. 1997),

the Second Circuit held that municipal officials who placated community sentiments by denying

approval for a substance abuse treatment facility in a multi-family building denied the applicants

and its future customers the benefit of municipal services and benefits, including the right to fair

treatment under the City's zoning ordinance.  The court ordered that approvals be issued.  *See*

*also, Sunrise Development, supra* (adoption of zoning amendment to prevent congregate care

facility while application was pending denies builder and future residents their zoning rights).

Plaintiffs herein seek merely to enforce their rights under a municipal service (zoning) so

they can construct housing for families with young children who may then educate their

children in the Edgemont School System.  For these reasons, plaintiffs have properly pled a

viable claim under § 3604(b).

E.     **A Claim is Pled Under § 3604(c)**

The prohibition in § 3604(c) against discriminatory statements applies on its face to any

person making discriminatory statements.  *U.S. v. Space Hunters, Inc.,* 429 F.3d 416 (2d Cir.

2005).  In *Space Hunters,* the defendant assisted individuals in their search for apartments in

New York City.  He frequently made derogatory comments to callers, including HUD

investigators.  The government prosecuted defendant for his discriminatory statements.  His

defense was that he was not involved in the rental or sale of dwellings, and therefore his

behavior was not prohibited by the FHA.

In rejecting his argument, the Second Circuit held:

> Nothing in this (§3604[c]) language limits the statute's reach to
> owners or agents or to statements that directly effect a housing
> transaction. Indeed, this language "does not provide any specific
> exemptions or designate the persons covered, but rather . . . applies
> on its face to anyone" who makes prohibited statements.

Undeterred, defendants here argue that there can be no violation of § 3604(c) because

defendants "did not make any statements prohibited by" § 3604(c).  However, the Amended

Complaint alleges: that Town Commissioner Stellato made a presentation to the Planning Board

which opposed plaintiffs' application (¶ 72), which included hand-outs regarding Edgemont

School District enrollment, and told the Town Engineer to illegally hand-revise (without the

benefit of compliance with Town Code § 285-64) the Town's Official Zoning Map (¶ 77); that

defendant Supervisor Feiner stated that the Town would use eminent domain powers if S&R did

not sell the property (¶ 54); and that defendant Town Board Member Bass attempted to extort

the purchase of the Property for a small fraction of its market value after the Town illegally

altered the Official Zoning Map (¶ 83).  All the above statements indicated discrimination

against families with young children who would reside in S&R's development.

**F.**    <u>**The Cases Cited by Defendants are Distinguishable**</u>

Defendants use fact-specific cases in attempting to justify the sweeping, blunderbuss arguments contained in their motion.  Upon close review, each of those cases is distinguishable and none of those cases is controlling.

In opposing plaintiffs' claims under § 3604(a), defendants rely heavily on *Easthampton Center, LLC v. Township of Easthampton*, 155 F.Supp.2d 102 (D.N.J. 2001), and *Lynn v. Village of Pomona*, 373 F.Supp.2d 418 (S.D.N.Y. 2005).  Defendants' reliance is misplaced.

In *Easthampton Center,* the defendant Township engaged in a three-year process to reduce the zoning density of several large undeveloped parcels of land.  Plaintiff's land was rezoned to eliminate housing as a permitted use, but office park development was permitted.  The challenges to the Township's rezoning ordinances were upheld, with the court holding that an across-the-board reduction in the maximum permitted housing development does not necessarily violate the prohibition on "familial status" discrimination.

*Easthampton Center* is, however, clearly distinguishable from this action.  First, and most importantly, the challenged zoning action in *Easthampton Center* was a Township-wide zoning amendment to reduce the number of dwelling units of any size which could be constructed in the entire Township.  Similarly, even though the plaintiff's property in *Easthampton Center* was adversely affected, the zoning amendment followed two years of study, amendments to the Township's master plan, voter referendums and Township-wide debate over the future of a community which was justifiably concerned that a two-fold increase in population would destroy the rural, country-like way of life of the Township.[12]  Such a

---

[12]    In *Easthampton Center* plaintiff's development application alone would have increased the Township's population by 25%. 155 F.Supp.2d at 109.  By contrast, here, plaintiff's proposed 37-unit project would have a *de minimis* impact on the Town's population.

reasoned, public, open and full discourse stands in stark contrast to the absurdly illegal conduct of defendants in secretly amending by hand the 2006 Official Zoning Map without the public notice, hearings, studies and resolutions mandated by Town Code § 285-64 and New York Town Law § 264.

The zoning actions herein were targeted against one property (S&R's) and one property owner (S&R), involved negotiations by S&R with defendants and the local civic association, involved skullduggery by the defendants Barnes, Bass, Juettner & Sheehan,[13] involved hidden or missing documentation which was crucial to the zoning appeal and interpretation sought by plaintiff S&R, and involved a rubber-stamp approval by the Town's Zoning Board of Commissioner Stellato's arbitrary and capricious determination that the property was in the R-20 district, all of which was clearly directed toward preventing increased enrollment within the Edgemont School District.

Second, in *Easthampton Center,* plaintiff and/or its principals owned the property for 11 years before the talk of zoning changes commenced, 12 years before the master plan amendment, and 13 years before the challenged zoning actions.  Here, the challenged zoning actions occurred at lightning speed within a few months only after plaintiff S&R took title to the property and informally proposed its application to the Town.

Third, plaintiff in *Easthampton Center* filed its application <u>after</u> the talk of the zoning amendment, <u>after</u> the master plan amendment and only <u>after</u> the zoning amendment was proposed and pending.  Here, the challenged zoning actions occurred within two months after plaintiff S&R met with the Town to reveal its development plans and demolished the house on

---

[13]     Defendants Bass, Sheehan, Juettner and Barnes knowingly conducted meetings at S&R's offices without the knowledge, consent or participation of defendant Supervisor Feiner; as such, the meetings were held in violation of § 100 *et. seq.* of New York's Public Officers Law, more commonly known as the Open Meetings Law.

the property, tipping off the Greenburgh Nature Center, located across the street from the property, that potential development was brewing.

Fourth, in *Easthampton Center,* despite the many chances over many years for plaintiff to voice its opposition to the challenged zoning amendments and to submit a development application, plaintiff waited until after the master plan was drafted and the public hearing process was starting. S&R had no such luxury, and its development application was wiped out with a stroke of a draftsman's pen within two months after it was proposed.

Defendants' reading of *Lynn v. Village of Pomona,* 373 F.Supp.2d 418 (S.D.N.Y. 2005), is similarly misguided. In *Lynn,* the court granted the defendant's motion for summary judgment based upon evidence presented to the court after document production and depositions. Defendants improperly attempt to apply the fact-specific review standard under Rule 56 F.R.Civ.P. to their Rule 12(b)(6) motion. This alone renders *Lynn* inapplicable.

In addition, defendants misread the test used by the court in *Lynn* on the elements of a *prima facie* case under § 3604(a). That test was a case-specific test formulated by the court for Lynn to survive a summary judgment motion. It has no factual or procedural application here. Defendants, however, ignore the standard for a builder of housing for a protected class, as established by the Second Circuit in *Huntington Branch, NAACP,* to wit: (1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis,* 426 U.S. 229 (1976); (3) what is the defendant's interest in taking the complained of action; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority

groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing?[14]

In any event, without any document production or depositions, it is entirely inappropriate to apply the *Huntington Branch* or *Lynn* factors at this most preliminary juncture in determining a Rule 12(b)(6) motion.

Defendants also mistakenly rely on *Clifton Terrace Associates, Ltd. v. United Technologies Corp.,* 929 F.2d 714 (D.C. Cir. 1991), for the proposition that § 3604(b) does not apply to municipalities and that municipal services are not protected by the FHA. This reasoning has been thoroughly repudiated. *See LeBlanc-Sternberg, supra*; *Sunrise Development, supra*; *Assisted Living Associates, supra*; *Innovative Health Systems, supra*. Defendants, therefore, can make no credible argument that the Town's denial of access to the rights protected by the Town's zoning code or access to the Edgemont School System is beyond the reach of the FHA.

## POINT III

### PLAINTIFF PROPERLY ALLEGES A CLAIM FOR A VIOLATION OF THE EQUAL PROTECTION CLAUSE

Defendants argument to dismiss the equal protection claim is also without merit (Def. Brief, pp. 31-32).

In support of the Equal Protection claim, the Amended Complaint alleges that: the zoning moratorium was primarily directed at the property (Amd. Comp., ¶ 2[a]; *see also* Risi Dec., Exh. 1, ¶ 34); the zoning "moratorium was crafted to apply primarily to the property and virtually no other properties" (*Id.* ¶ 50); the Westchester County Planning Board recognized the

---

[14]    In fact, the Second Circuit went further in two significant respects. First, it held that the four factors were not a requirement for a *prima facie* case, but only a guide to a final determination on the merits. 844 F.2d at 935-6. Second, it found that no evidence of discriminatory intent was necessary since such a requirement would place too high a burden on FHA plaintiffs. *Id.* at 937, fn. 7.

illegal focus of the moratorium ("[t]he fact that the proposed moratorium singles out multi-family dwellings within the Edgemont School District as the only example of why this proposed moratorium is necessary, raises questions about the moratorium's intent" (*Id.* at ¶ 67));[15] the actions of defendants "were intentionally designed to treat S&R differently from other property owners within the Town" and "were taken in bad faith and maliciously in an effort to coerce S&R to sell the property for less than just compensation." *Id.* at ¶s 109-110.

The Amended Complaint clearly alleges that S&R was treated differently from all other similarly situated property owners in the Town and all other property owners situated in the CA zoning district. Therefore, plaintiff respectfully submits that plaintiff has alleged an Equal Protection claim, either generically or under a "class of one" theory.

## A.    Generic Equal Protection Claim

Generic Equal Protection claims require allegations that S&R, compared with others similarly situated, was treated differently, and that such different treatment was based upon impermissible considerations, including intent to inhibit or punish the exercise of constitutional rights or bad faith intent to injure S&R. *Crowley v. Courville*, 76 F.3d 47 (3d Cir. 1996); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir. 1985). Here, the complaint alleges that (1) defendants worked in concert to promulgate an illegal zoning moratorium affecting only one of many similarly situated properties in the CA district, with only those properties with residential development proposed subject to its terms and (2) thereafter unlawfully changed the zoning status of plaintiff's property to a single-family zone in violation of the Greenburgh Town Code § 285-64 and New York Town Law § 264.

---

[15]     Paragraphs 2(a), 50 and 67 were incorporated by reference into the Equal Protection claim. *See* Amd. Comp., ¶ 107.

The Court need look no further than next door to find a "similarly situated" property owner in the multi-family zone. The 188-unit Scarsdale Woods condominium development, which is more than five times the size of plaintiff's proposed project, is located immediately next to plaintiff's property. Indeed, before Town Planning officials illegally flip-flopped on their position regarding the multi-family zoning status of plaintiff's property, they used the adjacent Scarsdale Woods project as a model for plaintiff's project, suggesting plaintiff create a more environmentally-friendly design – to which plaintiff agreed.

**B.    "Class of One" Theory**

Plaintiff similarly alleges sufficient facts to proceed on a "class of one" theory. For a "class of one" claim, plaintiff must allege facts sufficient to prove "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Nielsen v. D'Angelis,* 409 F.3d 100, 105 (2d Cir. 2005).

Here, S&R submitted an application for site plan approval to develop the property in full compliance with zoning; no variances were needed nor requested. This places S&R squarely in line with all other multi-family zoned property owners who have submitted "as of right" zoning applications to the Town. To say that S&R's application received a different treatment by the Town is a gross understatement. Hysteria ensued. Public pronouncements by elected officials, including Supervisor Feiner, to defeat the development were issued almost immediately. Town Officials demanded the purchase of the property for a small fraction of its value, followed by Town threats to use eminent domain to acquire the property if plaintiff refused. Town plans for

a building moratorium targeting plaintiff's project were announced and implemented. Hysterical, unsubstantiated and discriminatory statements about the danger of overcrowding in the precious Edgemont schools were made and embraced by the Town Board. Secret plots to secede from the Town were advanced and, the *coup de grace*, the 2006 Official Zoning Map was illegally hand-altered via an administrative order and used as the basis to defeat plaintiff's applications.[16]

Plaintiff respectfully submits that (a) no rational person could conclude that any other comparable site plan approval applicant, or any property owners in the CA district, was afforded similar treatment by defendants; (b) no rational person could justify the treatment of S&R as based upon legitimate governmental policies; and (c) no rational person could conclude that the difference between the way other applicants for site plan approval, or other property owners in the CA district, were treated, and the way S&R was treated was in any way a mistake. The Town's treatment of S&R was deliberate and intentionally destructive, implemented with the unabashed intention to prevent the construction of multi-family housing and coerce S&R to sell the property to the Town or its minions for less than the fair value.

Based upon the foregoing, plaintiff respectfully submits that it has validly pled an Equal Protection claim.

---

[16] It is anticipated that defendants will note that a portion of another parcel, known to the Town as 450-460 Central Avenue, was affected by the alteration of the zoning map. However, the portion of parcel that was rezoned for single-family housing is much smaller than S&R's 2.34 acre parcel (*see* Madden Dec., Exh. N) and thus is not large enough to accommodate residential development under CA district standards, which require a minimum lot size of two acres for residential development therein (*see id.*, Exh. D at § 285-29.1(3)(1)[1]).

## POINT IV

## PLAINTIFF HAS A VALID PROCEDURAL DUE PROCESS CLAIM

Defendants' due process argument misses the point. Plaintiff does not assert a substantive due process claim, nor does plaintiff claim a vested property right in the CA multi-family zoning classification.

However, the plaintiff does assert a claim for violation of its right to procedural due process arising from defendants' illegal altering of the 2006 Official Zoning Map to, in effect, rezone plaintiff's property to a single-family zone. In so doing, defendants violated both Town Law § 264 and Town Code § 285-64, which contain public notice and public hearing provisions mandated by the Due Process clause. These notice and hearing procedures were mandatory, not discretionary, and obligated defendants to provide plaintiff with public notice and public hearings before changing the zoning classification of its land.

We begin with some fundamental legal propositions that are beyond cavil. First, "the right of [a property owner] to devote [his] land to any legitimate use is properly within the protection of the Constitution." *Seattle Trust Co. v. Roberage,* 278 U.S. 116, 121 (1928). Second, a "fundamental requirement of due process in any proceeding . . . is notice reasonably calculated . . . to apprise interested parties of the pendency of an action and afford them an opportunity to be present objections." *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314 (1950). Stated another way, due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Mazo,* 380 U.S. 545, 552 (1972).

As this Court has noted, a plaintiff asserting a due process claim must have a "property interest" protected by the Fourteenth Amendment which is rooted in, or derived from, state law. *Frooks v. Town of Cortland,* 997 F.Supp.2d 438, 448-449 (S.D.N.Y. 1998), citing *Brady v. Town*

29

*of Colchester,* 863 F.2d 205, 211 (2d Cir. 1988), and *Bd. Of Regents v. Roth,* 408 U.S. 564, 577 (1972).

Here, plaintiff's right to public notice and to participate in public hearings regarding any proposed rezoning of its property arises from both Town Law § 264 and Town Code § 285-64. These laws unequivocally require public notice, public hearings, specific board referrals, factual findings and formal resolutions before the Town's Official Zoning Map can be amended. None took place.

Courts have held that where, as here, a zone change "exceptionally affected" a property owner "on an individual basis," by severely altering the permissible use of land, the impacted property owner has a right to public notice and public hearing of the proposed zoning legislation. *Nasierowski Bros. Inv. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir. 1991); *Harris v. County of Riverside,* 904 F.2d 497, 502 (9th Cir. 1990)(land use legislation which at the eleventh-hour was secretly amended, singling out and changing the zoning of land owner, annulled where governmental entity failed to give public notice and hearing to land owner).

*Nasierowski* is particularly applicable here. The plaintiff owned industrially zoned property where he intended to construct an "as of right" retail and warehouse development. After confirming the zoning with City building officials, he, like plaintiff, embarked upon the implementation of the project. Thereafter, the City Council proposed a zoning amendment which, while minimally impacting the plaintiff's property, did not seriously compromise or prevent his planned development. The City published notices of the proposed zone change legislation and conducted a series of public hearings. Since the legislation did not seriously impact plaintiff's proposed development, he did not attend the public hearings and logically presumed the law would be lawfully passed as published. *Nasierowski,* 949 F.2d at 891-2.

However, in a closed executive session at the final pubic hearing, the proposed zoning

legislation was amended at the urging of a disgruntled City Council member who lived in close

proximity to plaintiff's project.  The amendment singled out rezoning plaintiff's property to

prohibit the project.  There was no public notice, hearing or public debate of the proposed

rezoning of plaintiff's property which was passed in executive session.  Two City Council

members voted against the amendment on the grounds they believed the plaintiff was entitled to

prior notice and a hearing.  They were right.  *Id.* at 892-3.

In striking down the secret amendment which effectively rezoned plaintiff's land and

prohibited his project, the Sixth Circuit held that the City's failure to provide plaintiff with prior

public notice and a hearing before enacting the amendment violated the plaintiff's right to

procedural due process.  *Id.* at 895-6.

This rationale applies with equal force here.  In fact, the instant case presents a far more

egregious and compelling procedural due process violation.  Despite plaintiff's statutory rights to

the public notice and a hearing mandated by Town Law § 264 and Town Code § 285-64, the

defendants effectively rezoned the 2006 Zoning Map in secret.  No public notices were ever sent

or public hearings conducted.  No legislation was even drafted, proposed or enacted!  Nothing

was referred to either the Planning Board, Town Board or Westchester County Planning Board

as mandated by law.  Instead, consistent with "smoke-filled back room" politics, Town officials

directed Town employees to simply alter the 2006 Official Zoning Map by hand, moving a

zoning district line to change plaintiff's property from a multi-family to a single-family zone.

Walker Dec., Exh. J.  The first and only notice plaintiff received was a letter from defendants to

plaintiff's land use lawyer announcing the property was now in a single-family zone.  Id., Exh. I.

We submit this outrageous conduct cannot withstand the giggle test, let alone procedural due process scrutiny. As such, plaintiff has pled a viable procedural due process claim.

Defendants' reliance on *Parkview Associates v. City of New York,* 71 N.Y.2d 274, 525 N.Y.S.2d 176 (1988), has no merit. First, *Parkview* did not involve a due process claim. Second, unlike *Parkview,* plaintiff here does not assert an estoppel claim. Third, defendants' argument that plaintiff could have, but did not, make a good faith inquiry (1) ignores the Rule 12(b)(6) presumption of the truthfulness of the Amended Complaint's allegations, (2) lacks any factual foundation, since plaintiff could not have conceivably reviewed maps which were inexplicably and illegally produced by defendants only **five months after** S&R's March 9, 2007 FOIL request. Indeed, the only zoning maps available to plaintiff for review (1997, 2000, 2003 and 2006),[17] **all** confirmed plaintiff's property was zoned multi-family! Based upon these "official maps," every Town official agreed that plaintiff's property was in a multi-family zone. Indeed, had Town officials not shared this belief, they would have had no incentive to enact an illegal building moratorium.

Finally, and most significantly, unlike the Park Improvement District ("PID") maps involved in *Parkview,* here the Town's Code makes clear that the Official Zoning Map is "the **final authority** as to the current zoning classification of any land." Madden Dec., Exh. A, Town Code § 285-7(A). There was no similar provision in *Parkview.* To the contrary, the New York City zoning resolution at issue expressly made the text of the resolution superior to all other materials, including the PID maps in dispute. *Parkview,* 71 N.Y.2d at 281, 525 N.Y.S.2d at 178.

Given the foregoing, *Parkview* actually supports plaintiff's position.

---

[17]    In response to plaintiff's FOIL request the only relevant zoning map produced was the June 2006 map. All other maps provided were expressly repealed upon enactment of Greenburgh's current zoning ordinance on June 25, 1980. *See* Walker Dec., Exh. B-3, June 25, 1980 resolution at p. 7 thereof; *Rettaliata v. Town of Huntington,* 36 Misc.2d 781, 784, 233 N.Y.S.2d 593 (Sup. Ct. Nassau Cty.)(resolution of adoption of amended map an "ordinance" within the meaning of Town Law §§ 264 and 265).

## POINT V

## S&R DID NOT HAVE A FULL AND FAIR HEARING

The Zoning Board proceeding was a farce.  The ZBA immediately took the position that

the illegally re-drawn zoning map was valid and challenged S&R to prove a negative, despite

the fact that the Town failed to maintain any official documents affirmatively proving that the

2006 Official Zoning Map maintained by the Town (in addition to the official 1997 (2), 2000

and 2003 maps) were incorrect.[18]  It was an insurmountable burden, as was recognized by ZBA

member Rohan Harrison, in his vigorous dissent:

> While this Board is absolutely certain that the 2007 map is not the
> official zoning map of the Town, it cannot state with any certainty
> that the 2006, 2003, 2000 and all prior maps going back to 1980 are
> not the official zoning maps of the Town.  Unlike the 2007 map, there
> has been no admission by anyone that (s)he ordered the creation of
> these maps contrary to Section 285-64.  Thus, this Board is compelled
> to accept them as the "official" zoning maps of the Town until proven
> otherwise.
>
> To prove that the 2006 map and all prior maps are "unofficial"
> requires both a legal and factual foundation, which is what S&R
> established with the 2007 map.  The factual foundation is the Town
> Engineer or someone else changed the 2006 map to create the 2007
> map at Commissioner Stellato's request.  The legal foundation is that
> such change was not done pursuant to Section 285-64.  S&R had the
> burden of proving that the latest map (2007) is not official, and it
> sustained that burden.

Risi Dec., Exh. 3 at pp. 75-76.

Harrison went on to note that the Town whiffed in failing to follow the amendment

process mandated by Town Code § 285-64:

> the majority's characterization of the 2007 alteration to the 2006
> Official zoning map as a "correction" does not diminish the fact that

---

[18]     The ZBA <u>immediately</u> accepted the legitimacy of Commissioner Stellato's February 26, 2007 determination without question despite the fact that the conclusion was not based upon a review of any official zoning maps but rather upon a resolution that was **expressly repealed** when the Town rewrote its Zoning Code and Zoning Map as of June 25, 1980.  *See* Walker Dec., Exh. B-3, June 25, 1980 resolution at p. 7 thereof.

an amendment of the map occurred in violation of Section 285-64 of the Town Code. To "correct" the 2006 map is to alter, change or revise it. All of these terms involve adding to or subtracting from the 2006 map. Under Section 285-64, any addition to or subtraction from the Town's official zoning map is an amendment. When the Town Council amends the official zoning map of the Town, it does one of two things: (1) add to or (2) subtract from the map. Therefore, the majority's "correction doctrine" is a disguised amendment.

Additionally, the majority correctly concluded that this Board does not have the authority to invalidate a zoning map, because the power to creat (sic) and amend such map is a "legislative function." Despite its conclusion, the majority invalidated the Town's 2006 Official zoning map in favor of the 2007 unofficial zoning map. Thus, the majority has ignored its own conclusion.

*Id.* at 80-81.

The Zoning Board proceeding was tainted with equally fatal constitutional flaws. S&R was confronted with the impossible burden of attacking the legality of unofficial zoning maps from 1984, 1987 and 1991 (2), maps that had been unlawfully withheld by defendants in responding to plaintiff's FOIL request served four months earlier and only produced for the first time during the August 2007 Zoning Board proceeding. No witness appeared before the ZBA to lay any foundation (evidentiary, factual or otherwise) as to the origin, discovery or veracity of these maps.

Mr. Stellato (who had merely submitted a cryptic, unsworn "memo" to the Zoning Board with the "magical maps") conveniently failed to appear before the ZBA to explain the belated and mysterious production and origin of the previously unknown "magical maps," and the Zoning Board refused to compel Mr. Stellato to appear (see Risi Dec., ¶ 6). And, of course, although served with a subpoena by plaintiff, Mr. Stellato never did appear, depriving plaintiff of the fundamental right to cross-examine Mr. Stellato concerning the critical maps which the Zoning Board expressly relied upon in ruling against plaintiff. In sum, a majority of the Zoning

Board ignored the law, conducted a sham hearing in bad faith and placed plaintiff, rather than the Town, in the position of having to seek judicial intervention to redress this wrong.

## POINT VI

### S&R'S ARTICLE 78 CLAIM IS TIMELY

It is grossly misleading for defendants to argue that the November 9, 2007 decision of the ZBA "merely made some clerical corrections and was substantively identical to the November 1, 2007 decision." (Def. Brief at p. 33).

The November 9, 2007 decision is markedly different from the November 1, 2007 decision in that:

> 1. The November 1st decision lists Zoning Board member Malcolm Baumgartner as voting against S&R even though he was absent from the October 2007 meeting;
>
> 2. The November 1st decision identifies Mr. Baumgartner, who was absent, as the member seconding the motion that S&R's application be classified as a TYPE II action requiring no further consideration pursuant to New York's State Environmental Quality Review Act ("SEQRA"); and
>
> 3. The legal description of the Property which was the subject of the decision is clearly misidentified by the use of two "sheet" designations.

Walker Dec., Exhs. K and L.

The inclusion of Mr. Baumgartner as voting twice in the November 1st decision, despite being absent from the October 18, 2007 ZBA meeting, is even more curious in light of his affirmatively stating in a straw vote taken at the September 2007 ZBA meeting that he would vote in favor of S&R.[19]  Risi Dec. at ¶ 4.

---

[19]    Additionally, the vote of Mr. Rosenblum against S&R is ridiculous, as he did not sit with the ZBA during the July, August and September 2007 ZBA meetings, missing each presentation made on behalf of S&R, as well as the discussions held between counsel for S&R and the ZBA during those meetings. Risi Dec. at ¶ 5.

While none of these gross errors are surprising given the obvious rigged nature of the Zoning Board decision, they represent significant substantive changes which, if not corrected, would have rendered the November 1st decision a procedural nullity and illegal.

The Town obviously recognized the legal significance of these gaffes and quickly issued an amended decision dated November 9th, admonishing plaintiff in writing to "[p]lease use the Decision that is date stamped by the Town Clerk of Greenburgh November 9, 2007." (Walker Dec., Exh. L). For what purpose was S&R to "use" the November 9th decision other than to commence an Article 78 proceeding? Framing?

An agency determination is final, so as to trigger the limitations period, only when the agency issues an "<u>unambiguously final decision</u> that puts the petitioner on notice that all administrative appeals have been exhausted." *Matter of Carter v. State of New York*, 95 N.Y.2d 267, 270, 739 N.E.2d 730, 716 N.Y.S.2d 364 (2000)(emphasis added). As the *Carter* decision expressly holds, any ambiguity on the issue of "whether a final and binding decision has been issued" must be construed <u>against the agency and in favor of giving a petitioner his day in court</u>. *See id.* at 270, 716 N.Y.S.2d at 366 (emphasis added)(citations and quotations omitted).

Thus, to the extent that ambiguities exist on the question of precisely (1) when the Zoning Board's decision became final and binding, or (2) whether the November 1st decision was superseded and thus nullified by the November 9th decision, such ambiguities must be construed against defendants so as to grant plaintiff its day in court. While *Carter* concerns a prisoner's failed appeal of the revocation of his parole, the foundation of its holding is equally applicable here. The defendants created, purposefully or otherwise, an ambiguity regarding the finality of the Zoning Board's amended decision and now seek to use that ambiguity as a sword to defeat the Article 78 claim, arguing that the substantively defective November 1st decision

was actually the "final" decision. Stated simply, defendants cannot have it both ways. They

cannot direct S&R in writing to use the amended November 9th Decision as final, yet claim the

November 1st decision was actually final for statute of limitations purposes. Courts do not

condone such duplicity.

  *Palm Management Corp. v. Goldstein*, 8  N.Y.3d 337, 865 N.E.2d 840, 833 N.Y.S.2d

423 (2007), is clearly inapposite. There, the appeal involved a grant of a certificate of

occupancy authorizing certain uses for a parcel that mirrored prior certificates granted 10 and 14

years earlier! There, the initial decision did not reflect that an absent board member actually

voted twice against the party appealing to the zoning board, nor was there a letter from the

Town Clerk affirmatively instructing the applicant to "use" the amended decision for the only

possible purpose of any aggrieved property owner would – to commence an Article 78

proceeding.

**POINT VII**

**S&R HAS ALLEGED A NUMBER OF ACTS RISING TO THE LEVEL OF
UNCONSTITUTIONAL CUSTOMS OR POLICIES**

Defense counsel misstates the law with respect to whether the Town's abjectly illegal

correction of the 2006 Official Map was part of an unconstitutional custom or policy. In *Monell*

*v. Dep't of Soc'l Svcs.*, 436 U.S. 658 (1978), the Supreme Court held that a governmental entity

can incur section 1983 liability "when execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts [an] injury." *Id.* at 649. However, *Monell* "does not provide a separate cause of

action for the failure by the government to train its employees; it *extends* liability to a municipal

organization where that organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d

37

207, 219 (2d Cir. 2006)(emphasis provided) citing *Monell*, *supra*, at 694. Accordingly, S&R's constitutional claims do not hinge on whether it alleged the Town took or sanctioned actions that amount to an unconstitutional custom or policy.

Furthermore, defendants' argument that allegations of a single incident of unconstitutional activity are insufficient to demonstrate the existence of a custom or policy is wrong for two reasons. First, here defendants engaged in multiple, repeated illegal discriminatory acts. Second, this argument runs afoul of the Supreme Court's holding in *Pembauer v. Cincinnati*, 475 U.S. 469 (1986), wherein the court clarified that a single act could be the basis of municipal liability so long as the single challenged act was the decision of a municipal policymaker. *Id.* at 480. A plurality of the court suggested that a policymaker was one who, under state law, "possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

Nevertheless, the Amended Complaint alleges precisely such facts: that the Town did, in fact, violate S&R's constitutional rights by taking actions that amount to an unconstitutional custom or policy. The Amended Complaint clearly notes that the Town (1) attempted to coerce plaintiff to sell its property under threat of either a building moratorium or eminent domain; (2) fast-tracked implementation of an illegal building moratorium which specifically targeted plaintiff's project, and (3) when plaintiff refused to accede to defendants' extortion, defendants illegally rezoned plaintiff's property effectively aborting plaintiff's project.

Thereafter, the Zoning Board relied exclusively upon the illegal alteration of the 2006 official zoning map to place upon S&R the impossible burden of proving that its property was in a CA district, prohibiting S&R from compelling appearance of the very Town official who

belatedly supplied old zoning maps of unknown origin and questionable legitimacy, which had been illegally withheld from plaintiff.

When viewed in its totality, we submit the Town's conduct amounts to an unconstitutional custom or policy.

## POINT VIII

### THIS COURT DOES NOT LACK JURISDICTION OVER S&R'S DECLARATORY JUDGMENT AND ARTICLE 78 CLAIMS

This Court does not lack jurisdiction over S&R's declaratory judgment and Article 78 claims. Rather, it may exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. S&R respectfully requests the Court to do so.

District courts have routinely reviewed Article 78 claims involving zoning board decisions. *Masterpage Communs., Inc. v. Town of Olive*, 418 F.Supp.2d 66 (N.D.N.Y 2005); *Omnipoint Communs. Inc. v. Vill. of Tarrytown Planning Bd.*, 302 F.Supp.2d 205 (S.D.N.Y. 2004); *Sprint Spectrum L.P. v. The Board of Zoning Appeals of the Town of Brookhaven*, 244 F.Supp.2d 108, 111 (E.D.N.Y. 2003); *Omnipoint Communs., Inc. v. City of White Plains*, 175 F.Supp.2d 697 (S.D.N.Y. 2001) *rev'd on other grounds*, 430 F.3d 529 (2d Cir. 2005). *Omnipoint Communs., Inc. v. Common Council of Peekskill*, 202 F.Supp.2d 210 (S.D.N.Y. 2002). While each of the aforesaid cases also involved claims asserted under the Federal Telecommunications Act, here plaintiff has asserted federal constitutional claims and a Fair Housing Act claim.

The cases relied upon by defendants are distinguishable. In *Concerned Citizens v. New York State Dep't of Envtl. Conservation*, 1997 U.S. App. LEXIS 36155 (2d Cir. 1997), the Second Circuit held that federal jurisdiction was lacking because no state officials were named

39

as defendants and no diversity existed between the between the plaintiff and the state enforcing authorities. *Id.* at \* 17-18 (citations omitted).

In *Abato v. New York City Off Track Betting Corp.*, 2007 Dist. LEXIS 41846, the court chose, in its discretion, not to exercise supplemental jurisdiction. In so doing, the court relied upon this Court's decision in *Camacho v. Brandon,* 56 F.Supp.2d 370, 380 (S.D.N.Y. 1999)*,* where this court declined to hear an Article 78 claim because the matter was a purely state procedural remedy that should be litigated in state court.

In *Camacho*, this court was notably influenced by a "baffling state law complaint." *Id.* at 380. Furthermore, unlike in *Camacho,* we submit the Amended Complaint here is not "baffling" in the least. Finally, unlike *Camacho,* the allegations of the Article 78 claim are inextricably intertwined with plaintiff's federal constitutional and Fair Housing Act claims. As such, *Camacho* is distinguishable.[20]

## CONCLUSION

Defendants' motion should be denied.

Dated: White Plains, New York
       April 16, 2008

                    BLEAKLEY PLATT & SCHMIDT, LLP

                    BY: _____
                         WILLIAM P. HARRINGTON (WP-5262)
                    *Attorneys for Plaintiffs*
                    ONE NORTH LEXINGTON AVENUE
                    P.O. BOX 5056
                    WHITE PLAINS, NY 10602-5056
                    (914) 949-2700

---

[20]     In *Blatch v. Hernandez,* 360 F.Supp.2d 595 (S.D.N.Y. 2005), it appears the plaintiff failed to request that the court exercise supplemental jurisdiction nor did the court address the issue.